In re PITTSBURGH CUT FLOWER
CO., INC., Debtor.

MELLON BANK, N.A., Plaintiff,

v.

The UNION NATIONAL BANK OF
PITTSBURGH, Defendant.

Bankruptcy No. 89–2680.
Adv. No. 90–0271.

United States Bankruptcy Court,
W.D. Pennsylvania.

Aug. 23, 1990.

Stanley E. Levine, Campbell & Levine, Pittsburgh, Pa., for debtor.

Peter S. Russ, Buchanan Ingersoll P.C., Pittsburgh, Pa., for Union Nat. Bank of Pittsburgh.

Joy Flowers Conti, Kirkpatrick & Lockhart, Pittsburgh, Pa., for Mellon Bank, N.A.

Mark L. Glosser, Pittsburgh, Pa., for Committee of Unsecured Creditors.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is a motion by The Union National Bank of Pittsburgh ("UNB") to dismiss this adversary action due to lack of subject matter jurisdiction.

UNB contends that the dispute between it and Mellon Bank, N.A. ("Mellon") neither arises in nor arises under a case under title 11 and that this adversary action consequently is not a core proceeding pursuant to 28 U.S.C. §§ 157(b) and (c). UNB further maintains that this adversary action is not related to a case under title 11.

Mellon responds that this adversary action is a core proceeding which arises under § 510(a) of title 11. Alternatively, Mellon argues that this proceeding is related to the underlying bankruptcy case because determination of the former will have an effect on administration of the latter.

The motion by UNB to dismiss for want of subject matter jurisdiction will be denied

as the Court determines this proceeding to be "core" to the administration of this bankruptcy case.[1]

## FACTS

The Complaint in this adversary action expressly avers that this action is based on 11 U.S.C. § 510(a).

UNB and Mellon claim priority liens on property of Pittsburgh Cut Flower Co., Inc. ("Debtor") pursuant to judgments each obtained in the approximate amounts of $1.65 million and $1.33 million, respectively. Both judgments were filed on July 13, 1989.[2] UNB's judgment, however, was filed and recorded first.

It is averred that UNB and Mellon had reached oral agreement prior to the filing of the judgments that if either of them filed a judgment against Debtor before the other similarly acted, both liens would be *pari passu* and neither UNB nor Mellon would be in a superior position in relation to the other.

On July 13, 1989, UNB and Mellon executed a written agreement entitled "Collateral Sharing Agreement" ("agreement"), which provided for *pari passu* treatment of their respective liens. The agreement recited that UNB and Mellon "... wish to formalize their agreement to share on an equal basis ..." and provided that Mellon and UNB "... will be deemed to have simultaneously filed their judgment, with no party having priority over the other ..." According to Mellon, UNB in effect partially subordinated its interest in Debtor's property to Mellon by agreeing to "share on an equal basis".

UNB has acknowledged that the agreement is enforceable, but insists that Mellon's right to *pari passu* treatment is limited and enforceable only upon the sale or other liquidation of Debtor's property.

On June 8, 1990, Debtor submitted a Plan of Reorganization which calls for disparate treatment of UNB and Mellon. It treats UNB as a Class 1(A) claim holder while treating Mellon as Class 2 claim holder.

Mellon seeks an Order: (1) enforcing the agreement and declaring that the liens of UNB and Mellon are *pari passu;* (2) directing Debtor and other interested parties to accord the liens of UNB and Mellon equal treatment in any proposed plan of reorganization; and (3) directing UNB and Debtor to share with Mellon on an equal basis any sums advanced to UNB as adequate protection.

## ANALYSIS

Subject matter jurisdiction of the district courts and bankruptcy courts over bankruptcy matters is statutorily prescribed at 28 U.S.C. §§ 1334 and 157.

The district courts have original and exclusive jurisdiction of all "cases under title 11". 28 U.S.C. § 1334(a). "Cases under title 11" refers to the underlying bankruptcy case. It is the case upon which all of the proceedings which follow the filing of a petition for relief are predicated. *See* 1 Collier on Bankruptcy ¶ 3.01[1][c][i] at p. 3-20 (15th ed. 1990).

The district courts also have original, but not exclusive, jurisdiction of civil proceedings arising under title 11 or arising in or related to cases under title 11. 28 U.S.C. § 1334(b).

A "proceeding" is anything that occurs within a case and includes adversary actions. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess., 445 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

A proceeding which "arises under title 11" is one which is based upon a specific provision of title 11:

1. Had the Court not determined the matter "core" to the administration of this estate, we would have found it "related to" a case under title 11 in that its outcome would clearly (not merely "could conceivably") have an effect on this bankruptcy proceeding. *See Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984).

2. The judgments were taken within ninety (90) days of this bankruptcy filing. Debtor-in-possession infers in its first submitted Disclosure Statement that it desires acceptance of a voluntary plan and accordingly, as of this date, has determined not to challenge them.

The phrase "arises under" has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter in which a claim is made under a provision under title 11. H.R.Rep. No. 595, 95th Cong., 1st Sess., 445 (1977), U.S.Code Cong. & Admin.News 1978, p. 6401.

The district court may refer to the bankruptcy court for that district any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11. 28 U.S.C. § 157(a).

The bankruptcy court may hear, determine, and enter appropriate orders in all cases under title 11 and all core proceedings arising under title 11 or arising in a case under title 11 which have been so referred to it. 28 U.S.C. § 157(b). What constitutes a "core proceeding" is not statutorily defined. It does, however, include proceedings to determine the validity, extent, or priority of liens. 28 U.S.C. § 157(b)(2)(K).

It is for the bankruptcy court to determine in the first instance whether a proceeding is core or is otherwise related to a case under title 11. 28 U.S.C. § 157(b)(3).

According to UNB, this adversary action neither arises in a case under title 11 nor arises under title 11 and, consequently, is not a core proceeding for purposes of 28 U.S.C. § 157(b). UNB avers this is merely a dispute between two creditors of the Debtor as to allocation of funds due from Debtor and that said dispute has no effect upon this estate or this Debtor.

■ This contention is incorrect. Mellon's action against UNB is a core proceeding which arises under title 11. Mellon is asking this court to determine the priority of UNB's lien in relation to Mellon's lien. Specifically, Mellon is asking for a determination that UNB's lien, which is prior to Mellon's because UNB's judgment was recorded first, is partially subordinated to Mellon's lien and that the two (2) liens are *pari passu* as a result of the collateral sharing agreement. Proceedings to determine the priority of liens are core proceedings. 28 U.S.C. § 157(b)(2)(K).

■ In addition, this proceeding also involves matters pertaining to the administration of Debtor's estate and therefore is core pursuant to 28 U.S.C. § 157(b)(2)(A). As has been indicated, Debtor has submitted a proposed Plan of Reorganization which would treat UNB and Mellon disparately by placing them in different creditor classes.

It is not at all clear that it would be possible for approval or rejection of this proposed Plan to go forward in the absence of a determination of the adversary action presently before the Court. For instance, it is not apparent that creditors would be able to vote for or against the proposed Plan, or who can object to it, until it is determined whether UNB and Mellon are to be treated the same or disparately. Were this matter to be resolved in some other forum, administration of the bankruptcy estate would be adversely affected and unduly delayed for an undetermined period of time.

Moreover, this proceeding arises under title 11. Mellon has invoked 11 U.S.C. § 510(a), which pertains to the enforceability of subordination agreements, in seeking to have the terms of the collateral sharing agreement recognized and enforced in the manner set forth previously.

UNB argues that this matter does not arise under title 11 because § 510(a) of the Bankruptcy Code does not apply to the facts of this case. More precisely, UNB insists that the agreement in question is not really a subordination agreement, as Mellon contends, but rather is merely an agreement to share collateral upon liquidation of Debtor.

There are two (2) types of challenges to subject matter jurisdiction. First, there is the facial attack, which contends that the allegations in support of jurisdiction in the complaint are insufficient on their face to support jurisdiction. Second, there is the factual attack, which denies the truth of the allegations in support of jurisdiction. *Mortensen v. First Federal Savings &*

*Loan Ass'n.*, 549 F.2d 884, 891 (3rd Cir. 1977).

 A court must, when assessing the merits of a facial attack, assume the truth of all jurisdictional allegations in the complaint. *Cardio–Medical Assocs. v. Crozier–Chester Medical Center*, 721 F.2d 68, 75 (3rd Cir.1983) (citing *Mortensen*, 549 F.2d at 891).

 When it is assessing the merits of a factual attack, the court may receive and consider any competent relevant evidence pertaining to the truth of the jurisdictional allegations of the complaint. No presumption of truthfulness attaches to the allegations supporting jurisdiction. *Mortensen*, 549 F.2d at 891.

This last principle is not without exception, however. Where the jurisdictional facts are "inextricably intertwined" with the merits of the action, the preferable practice is to *assume* that subject matter jurisdiction exists and to proceed to determine the merits of the action. *Sun Valley Gas v. Ernst Enterprises*, 711 F.2d 138, 140 (9th Cir.1983); *Williamson v. Tucker*, 645 F.2d 404, 416–17 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

Mellon has in this action *alleged* facts sufficient to withstand a facial attack. It has invoked § 510(a) of the Bankruptcy Code and alleges that the collateral sharing agreement in reality constitutes a subordination agreement.

UNB, without clearly so indicating, apparently has launched a factual attack on the allegations supporting jurisdiction by denying that the agreement at issue in fact is a subordination agreement.

The allegation that jurisdiction is based upon § 510(a) of the Bankruptcy Code is inextricably intertwined with the merits of this adversary action. It is not possible to ascertain whether § 510(a) provides a basis for jurisdiction without determining at the same time whether the agreement at issue

here in fact is (as Mellon claims) a subordination agreement. Mellon's claim therefore will not be dismissed on jurisdictional grounds at this time. Rather, it will be assumed for the time being that Mellon's claim arises under § 510(a) of title 11.[3]

An appropriate Order will be issued.

### ORDER OF COURT

AND NOW at Pittsburgh in said District this 23rd day of August, 1990, in accordance with the foregoing Memorandum Opinion of this same date, it is ORDERED, ADJUDGED and DECREED that the Motion To Dismiss by Defendant Union National Bank of Pittsburgh be and is hereby DENIED.

---

**3.** Because it has been determined that this adversary action is a core proceeding which arises under title 11 and that this court therefore has jurisdiction to hear and determine the matter and to enter a judgment, it will not be necessary to consider whether the action is "related to" a case under title 11.