31 F.3d 113
 MELLON BANK, N.A., Plaintiff-Appellee,
v.
UNITED BANK CORPORATION OF NEW YORK; Subsidiaries Employee
Stock Ownership Trust, United Bank Corporation of
New York; Michael A. Jacobs,
Defendants-Appellants.
 No. 1752, Docket 93-9358.
 United States Court of Appeals,
Second Circuit.
 Argued May 27, 1994.
Decided Aug. 9, 1994.
 
 James M. Reilly, Albany, NY (Herzog, Engstrom & Koplovitz, of counsel), for plaintiff-appellee.
 J. Lawson Brown, Jr., Albany, NY (Harris, Beach & Wilcox, of counsel), for defendants-appellants.
 Before: VAN GRAAFEILAND, WINTER and ALTIMARI, Circuit Judges.
 ALTIMARI, Circuit Judge:
 
 
 1
 This appeal concerns the interpretation of a clause of a loan agreement between plaintiff-appellee Mellon Bank, N.A. ("Mellon") and defendants-appellants United Bank Corporation of New York ("UBC") and Subsidiaries Employee Stock Ownership Trust ("ESOT") (collectively herein "Defendants"). The loan agreement provides for acceleration of the balance of the loan by Mellon in the case of certain "Events of Default" by Defendants. At issue is whether the default of a financial covenant by Defendants falls within the loan agreement's definition of "Events of Default" which can trigger acceleration of the loan. The district court granted summary judgment for Mellon, finding that the definitional section in question unambiguously includes the default of the financial covenant. For the reasons discussed below, we conclude that summary judgment was improperly granted and remand for further proceedings.
 
 BACKGROUND
 
 2
 The loan transaction underlying this appeal involves various agreements between Mellon, UBC, and ESOT. For purposes of this appeal, however, all that is important is that Mellon lent ESOT two million dollars and that loan was guaranteed by UBC. The actual promissory note between Mellon and ESOT will be referred to as the Loan Agreement, and all the documents relating to the transaction will be referred to collectively as the Loan Documents.
 
 
 3
 Beginning in November 1989, UBC reported to Mellon that UBC was not in compliance with Article 4.2(a) of the Loan Agreement. That section requires that UBC not allow its nonperforming assets to exceed 4.0% of its total loans ("bad-debt ratio covenant"). After a period of negotiations concerning the default, Mellon notified the Defendants that it was invoking Article 6.2 of the Loan Agreement, permitting it to accelerate the balance of the Loan after an occurrence of an "Event of Default."
 
 
 4
 Defendants failed to pay the accelerated principal balance, and Mellon commenced an action in the Northern District of New York seeking, among other things, to recover against ESOT pursuant to the promissory note and to recover against UBC pursuant to the guarantee. The district court (McCurn, J.) granted summary judgment in favor of Mellon. The court found that it was clear that Defendants had breached the Loan Agreement, and that the agreement unambiguously provides that such breach constitutes an "Event of Default" entitling Mellon to accelerate the loan.
 
 
 5
 Defendants now appeal.
 
 DISCUSSION
 A. Contract Interpretation
 
 6
 Neither party disputes that a breach of Article 4.2 of the Loan Agreement has occurred. Rather, the question on appeal is whether Defendants' breach of the financial covenant constitutes an "Event of Default" under Article 6.1 of the agreement. If it does, Article 6.2 permits acceleration of the loan by Mellon.
 
 
 7
 Article 6.1 provides in pertinent part,
 
 
 8
 An Event of Default shall mean the occurrence of one or more of the following described events: ...
 
 
 9
 (d) The Borrower, the Guarantor or any other member of the Controlled Group shall default in the performance of any other covenant, condition, obligation or provision under any Loan Document and such default shall constitute an Event of Default under such Loan Document; ...
 
 
 10
 The district court concluded that this provision unambiguously includes the default of the financial covenant and granted summary judgment for Mellon. "Our review of such a grant is de novo, employing the same tests as those applied at the district court." Sayers v. Rochester Tel. Corp., 7 F.3d 1091, 1094 (2d Cir.1993) (citation omitted). Summary judgment is only proper in contract disputes if the language of the contract is " 'wholly unambiguous.' " Wards Co. v. Stamford Ridgeway Assocs., 761 F.2d 117, 120 (2d Cir.1985) (quoting Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir.1975)); see also Williams & Sons Erectors v. South Carolina Steel, 983 F.2d 1176, 1183 (2d Cir.1993) ("Summary judgment may be granted when the provisions of a contract convey a definite and precise meaning, absent any ambiguity.") (citations omitted). The question of whether a contract is clear or ambiguous is to be decided by the court as a matter of law. See Sayers, 7 F.3d at 1094 (citations omitted).
 
 
 11
 Each party claims that the provision unambiguously supports its position. Mellon claims that because Article 4.2 is a covenant under the Loan Agreement, it falls within the language of Article 6.1(d) which includes "any other covenant ... under any Loan Document," and its breach therefore clearly constitutes an "Event of Default." The district court agreed, finding any other interpretation of the language of Article 6.1(d) would lead to the unreasonable conclusion that the financial covenants listed in Article 4 have no meaning.
 
 
 12
 Defendants claim that the above interpretation is counter to the plain language of the section. According to them, Article 6.1(d) provides for a two-part test: (1) Defendants must default in performance of a covenant under a Loan Document, and (2) this default must be defined as an Event of Default under that particular Loan Document. Because the Loan Agreement does not specifically define the default of Article 4.2 as an Event of Default, Defendants claim that the two part test has not been met.
 
 
 13
 In reviewing the two interpretations, "we need not determine which is the more likely interpretation; we need merely decide whether [each] ... is sufficiently reasonable to render the clause ambiguous." Wards Co., 761 F.2d at 121. Defendants' interpretation gives "literal effect" to all the words of the clause, see Rothenberg v. Lincoln Farm Camp, Inc., 755 F.2d 1017, 1019 (2d Cir.1985), and is quite logical when read in the context of all the Loan Documents. It seems that the purpose of the second clause of paragraph (d) may have been to include in the definition of Events of Default of the Loan Agreement, Events of Default labeled as such in the other Loan Documents, i.e., the guarantee or pledge agreement. Given that the clause uses the term Loan Documents, however, it includes the Loan Agreement itself. Consequently, because the Loan Agreement does not specifically define a default of the bad-debt ratio covenant as an Event of Default, such default is not an Event of Default.
 
 
 14
 On the other hand, although Mellon's explanation strays somewhat from the plain meaning of the words used in the second clause of the section, any other interpretation leads to the unlikely conclusion that the parties did not intend for the breach of an important financial covenant to have any ramifications. Thus, reading the clause "in the context of the entire agreement," Mellon's interpretation is equally reasonable. See Sayers, 7 F.3d at 1095 (quotation omitted).
 
 
 15
 Given the two conflicting reasonable interpretations, we find the contract ambiguous. See Sayers, 7 F.3d at 1095; Williams & Sons, 983 F.2d at 1184. As a general matter, we have held that when a contract is ambiguous, its interpretation becomes a question of fact and summary judgment is inappropriate. See, e.g., Walk-In Med. Center, Inc. v. Breuer Capital Corp., 818 F.2d 260, 264 (2d Cir.1987); Rothenberg, 755 F.2d at 1019. We have recently clarified this general rule to emphasize that ambiguity itself is not enough to preclude summary judgment. Rather, in order for the parties' intent to become an issue of fact barring summary judgment, there must also exist relevant extrinsic evidence of the parties' actual intent. See Williams & Sons, 983 F.2d at 1183-84 ("Ambiguity without the existence of extrinsic evidence of intent presents not an issue of fact, but an issue of law for the court to rule on.") (citing Antilles Steamship Co. v. Members of Am. Hull Ins. Syndicate, 733 F.2d 195, 207 (2d Cir.1984) (Newman, J., concurring)); see also Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir.1992).
 
 
 16
 In this case, there is such evidence. Mellon submitted affidavits and documents demonstrating that Defendants themselves continuously referred to the breach of Article 4.2 as an Event of Default. In response, Defendants submitted evidence indicating that they referred to the event as an "Event of Default" pursuant to an express demand by Mellon, and they were assured that their default would not jeopardize the status of the loan or result in the loan's acceleration. Because the district court found the agreement unambiguous, it never considered this evidence or any other extrinsic evidence.
 
 
 17
 In sum, given the ambiguity of the language in Article 6.1(d) and the above factual dispute, the grant of summary judgment was clearly improper.
 
 B. Unconscionability
 
 18
 Defendants also claim that to allow acceleration of the loan balance for a default of the financial covenant would be unconscionable. In support of their position, they invoke Tunnell Pub. Co. v. Straus Communications, 169 A.D.2d 1031, 565 N.Y.S.2d 572 (1991), a case where the court found a contract clause providing for the acceleration of an entire loan upon a "trivial or inconsequential" breach an unconscionable penalty.
 
 
 19
 Although we view with skepticism Defendants' claim that the breach of Article 4.2 was "trivial or inconsequential," given Defendants' failure to present this argument to the district court, we decline to address it now. We have repeatedly stated that "[a] party seeking to overturn the decision of a trial court may not ordinarily obtain review of an issue not raised below." Mycak v. Honeywell, Inc., 953 F.2d 798, 803 (2d Cir.1992) (citations omitted). We will hear the new argument on appeal "only when necessary to avoid manifest injustice." Schmidt v. Polish People's Republic, 742 F.2d 67, 70 (2d Cir.1984) (citations omitted). Because Defendants clearly had the opportunity to raise any evidence in support of this claim below, we find no manifest injustice in our refusal to hear the claim for the first time on appeal.
 
 
 20
 We have examined Defendants' remaining contentions and find them to be without merit.
 
 CONCLUSION
 
 21
 The grant of summary judgment is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.