In re KINGS FALLS POWER
CORPORATION, Debtor.

In re FOURTH BRANCH ASSOCIATES,
Debtor.

FOURTH BRANCH ASSOCIATES, Key
Trust Company, as Indenture Trustee
and Teachers Insurance and Annuity As-
sociation of America, Plaintiffs,

v.

MOHAWK PAPER MILLS,
INC., Defendant.

Bankruptcy Nos. 94–62115, 94–62116.
Adv. No. 95–70054.

United States Bankruptcy Court,
N.D. New York.

June 26, 1995.

The Quinn Firm (Donna M. Quinn, of counsel), Albany, NY, for debtor.

Hiscock & Barclay (Robert Qulia, of counsel), Albany, NY, for Key Trust Co.

Stroock & Stroock & Lavan (Brian Cogan, of counsel), New York City, for Teachers Ins. and Annuity Ass'n of America.

Degraff, Foy, Holt–Harris, Mealey & Kunz (John D. Rogers, of counsel), Albany, NY, for Mohawk Paper Mills, Inc.

Michael Collins, Office of the U.S. Trustee, Utica, NY.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

This matter comes before the Court by virtue of an Order to Show Cause dated March 24, 1995, obtained by Plaintiffs Fourth Branch Associates ("Debtor"), Key Trust Company as indenture trustee ("Key Trust"), and Teachers Insurance and Annuity Association of America ("TIAA") for entry of summary judgment on shortened time pursuant to Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") 9006(c)(1) and 7056, which incorporates by reference Federal Rules of Civil Procedure ("Fed.R.Civ.P.") 56. Plaintiffs' motion for summary judgment seeks to recover upon their complaint for declaratory judgment against Defendant Mohawk Paper Mills, Inc. ("Mohawk").

Argument on the motion was heard on April 4, 1995, at the Court's regular motion term in Syracuse, New York. The parties were afforded an opportunity to file additional memoranda of law on certain jurisdictional issues and the matter was submitted for decision on April 19, 1995.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a), (b)(1), (b)(2)(A), (K), and (O).

## FACTS

Debtor is a New York general partnership formed in 1986 to design, construct, operate and own hydroelectric power facilities. On October 1, 1986, Debtor entered into a series of agreements relating to the construction financing for a hydroelectric facility ("Mohawk facility"). Included among those agreements were: (a) a "Ground Lease", between Mohawk, as Lessor, and Debtor, as Lessee; (b) an assignment of the Ground Lease, pursuant to which Debtor assigned its rights thereunder to Saratoga Industrial Development Agency ("SIDA"); and (c) a "Leasehold Mortgage" of the Ground Lease, granted by SIDA to Key Bank N.A. ("Key Bank"), to allegedly secure, in part, monies made available by Key Bank to finance the construction of the Mohawk facility.

Pursuant to the Ground Lease, Mohawk leases real property located in Waterford, New York to Debtor. *See* Ground Lease, Schedule "A". The Ground Lease commenced on November 19, 1986, and remains in effect, unless sooner terminated, until November 18, 2016. *Id.* at § 1.02. At the termination or expiration of the Ground Lease, all structures on the real property and other rights and interests of Debtor relating to the real property revert to Mohawk. *Id.* at § 1.03.

Ground Lease § 8.15, titled *SUBORDINATION OF LEASE PAYMENTS,* states in relevant part:

Lessor agrees that the Leasehold Mortgage to Key [Bank] or any party to whom Key [Bank] assigns its Leasehold Mortgage and all obligations secured thereby (the "Obligations") shall have priority in right and remedy over any claims, rights or interests for the payment of money which Lessor has by virtue of this Lease, including without limitation, the following:

(a) If Lessee is in arrears in any of the Obligations, Lessee shall bring all such Obligations current before Lessee commences to pay Lessor any due amounts due [sic]

(b) If Key [Bank] takes possession of the Project Facility, or title to the Project Facility, Key [Bank] shall have no obligation to make any Payments. Provided, nonetheless, that if, during the time that Key [Bank] is in possession or has title, if the Project Facility generates profits in excess of all sums due Key [Bank], then the excess shall first be paid to Lessor to pay past due Payments, and remaining profits shall be paid to Lessee....

Beginning in about May, 1989, Debtor and SIDA obtained permanent financing for the Mohawk facility by issuance of a series of bonds. Such series of bonds are referred collectively below as the "Fourth Branch/SIDA Bonds". Plaintiff Key Trust, an affiliate of Key Bank, is the indenture trustee for the Fourth Branch/SIDA Bonds. All of the Fourth Branch/SIDA Bonds are held by TIAA. According to Debtor's schedules, the debt owed to TIAA, represented by the Fourth Branch/SIDA Bonds, is approximately $9.5 million.

The Fourth Branch/SIDA Bonds are allegedly secured pursuant to an Amended and Restated Indenture of Mortgage and Pledge and Security Agreement, dated May 15, 1989, between Debtor, SIDA, and Key Trust, as indenture trustee ("Fourth Branch Indenture"). Under the Fourth Branch Indenture, the Fourth Branch/SIDA Bonds are allegedly secured, in part, by "all of the estate, right, title and interest" of Debtor and SIDA in the Ground Lease.

In connection with the permanent financing of the Mohawk facility, Key Trust received an assignment of the Leasehold Mortgage from Key Bank. In addition, the Fourth Branch Indenture constitutes a leasehold mortgage of the interest of Debtor and SIDA in the Ground Lease. Thus, pursuant to a Certificate, dated July 13, 1989, Mohawk, as owner and Lessor of the site upon which the Mohawk facility is built, agreed that:

for as long as the [Fourth Branch] Indenture shall be in effect, the [Fourth Branch] Indenture shall for all purposes of the

Ground Lease constitute the Leasehold Mortgage (as defined in the Ground Lease) most senior in priority encumbering the Leasehold Estate (as so defined) ... *See* Certificate § 1.11(D).

The Certificate further provides, in part, that:

in the event of the occurrence of a default under the Ground Lease and in addition to any other rights that the Trustee, as a Leasehold Mortgagee, may have under the Ground Lease ... the Trustee shall:

(1) notify Mohawk of its election to proceed with due diligence promptly to acquire possession of the Project [Mohawk facility] or to foreclose the Lien of the Indenture ... and

(2) deliver to Mohawk an instrument in writing duly executed and acknowledged wherein the Trustee agrees that:

(a) during the period that the Trustee or its nominee or a receiver or keeper of rents and profits appointed upon application of the Trustee shall be in possession of the Project and/or during the pendency of any such foreclosure ... it shall pay or cause to be paid to Mohawk all sums which become due to Mohawk under the Ground Lease ... *See* Certificate § 1.11(H).

On July 29, 1994, Debtor filed a voluntary petition for reorganization under Chapter 11. On that date, Debtor also filed an emergency motion for the use of cash collateral. In its motion, Debtor argued that the security interests of Key Trust, held for the benefit of TIAA, had lapsed prior to the commencement of the bankruptcy case. Accordingly, Debtor argued, the security interest was voidable and TIAA's "cash collateral" could be freely utilized.

After substantial negotiations, on or about December 30, 1994, the Court approved a "global settlement stipulation" between, among others, Debtor, TIAA, Key Trust, and Key Bank. Pursuant to the global settlement stipulation, Debtor was authorized to use cash collateral and Key Trust's security interest was regranted and restored. *See*

Global Settlement Stipulation, § (C). The global settlement stipulation also provided that TIAA would not receive any principal or interest payments on its obligation until certain payments were made to other parties. *Id.* at § (F)(2). If these payments are not been made by July 31, 1995, the parties will be automatically restored to their respective rights and positions as they existed prior to the global settlement stipulation. *Id.* at § (F)(7). Mohawk was not a party to the global settlement stipulation and interposed a limited objection to the same.

Mohawk contemporaneously entered into a stipulation ("Mohawk stipulation") extending the time for Debtor Fourth Branch to assume or reject the Ground Lease. The Mohawk stipulation was approved by Order of this Court on December 30, 1994.

On or about March 20, 1995, Plaintiffs commenced the instant adversary proceeding. Thereafter, by Order to Show Cause dated March 24, 1995, Plaintiffs moved for entry of summary judgment on shortened time. Issue was joined on April 3, 1995, and an amended answer containing a conditional counterclaim and demand for a jury trial was filed April 24, 1995. Plaintiffs filed their reply to the conditional counterclaim on May 1, 1995.

On or about April 28, 1995, Debtor and TIAA filed a joint Disclosure Statement and a Plan of Reorganization. On May 16, 1995, Mohawk filed an objection to the Disclosure Statement. Thereafter, on June 1, 1995, Debtor and TIAA filed an Amended Disclosure Statement and an Amended Plan of Reorganization. The Amended Disclosure statement was approved by Order of this Court on June 1, 1995. A confirmation hearing is scheduled for the Amended Plan of Reorganization on June 29, 1995.[1] Debtor seeks to assume the Ground Lease upon confirmation of the Amended Plan of Reorganization.

### ARGUMENTS

Mohawk begins by arguing that Plaintiffs' request for a declaratory judgment is prema-

1. On June 22, 1995, Mohawk filed an estimated proof of claim of $66,091.30 for rents arising under the Ground Lease. Mohawk contempora- neously interposed an objection to the Amended Plan of Reorganization.

ture. Mohawk directs the Court's attention to the Declaratory Judgment Act ("Act") which requires that an "actual controversy" must exist before a court may declare the rights of parties. *See* 28 U.S.C. § 2201(a). Mohawk contends that "until the Ground Lease is assumed and future obligations, rights, and remedies under the Ground Lease become an issue, there is no actual and present controversy for this Court to decide." *See* Mohawk's Memo at 9 (emphasis in original).

Mohawk's next argument is that the Court lacks subject matter jurisdiction over the instant dispute. Mohawk argues that because the Ground Lease has not been assumed, it is not property of the estate. Mohawk submits that where a dispute does not impact on property of the estate, the proceeding is not related to the bankruptcy case and thus the Court does not have subject matter jurisdiction. *See* Mohawk's Supplemental Memo at 2. Mohawk further argues that the Court lacks jurisdiction because the within dispute involves "two non-debtor entities," namely, TIAA and Mohawk. *See* Mohawk's Memo at 16.

Mohawk contends that even if the Court possesses subject matter jurisdiction, the instant dispute is not a core proceeding. Mohawk submits that a core proceeding is one that could only arise in the context of a bankruptcy case. Because disputes concerning subordination clauses exist outside of bankruptcy, Mohawk concludes that the within matter is not core.

Turning to the merits of the summary judgment motion, Mohawk contends that Plaintiffs improperly interpret the Ground Lease and the Certificate. Mohawk argues that pursuant to the Certificate it is entitled to issue a Notice of Default to the Leasehold Mortgagee, Key Trust, upon Debtor's failure to pay rent. Following receipt of the Notice of Default, Key Trust has the option to take possession of the Mohawk facility. If Key Trust takes possession, then Mohawk is entitled to all sums do it. If Key Trust does not take possession, then Mohawk is entitled to terminate the Ground Lease.

Mohawk further contends that even if the Court finds that its rights are subordinate,

Plaintiffs, by acts prejudicial to Mohawk, have waived their rights under the Ground Lease subordination provision. Mohawk argues that the conduct of the parties and the terms of the global settlement stipulation support its claim that Plaintiffs prejudiced Mohawk's rights as a subordinate party.

Plaintiffs argue that the instant matter presents an actual controversy as resolution of the same is essential for the confirmation of a plan of reorganization prior to July 31, 1995. Plaintiffs further argue that absent a confirmed plan of reorganization, Debtor's reorganization proceedings will unravel and the estate will be beset with litigation.

Plaintiffs contend that the instant dispute is a core proceeding under 28 U.S.C. § 157(b)(2). Plaintiffs submit that this dispute "arises in" a Chapter 11 case as it would not exist but for Debtor's bankruptcy. Plaintiffs also argue that case law unanimously holds that disputes over subordination agreements constitute "core" proceedings.

Plaintiffs argue that summary judgment is appropriate as there is no genuine issue as to any material fact. Plaintiffs contend that the Ground Lease is an unambiguous contract which expressly provides that Mohawk would not be paid any amounts due under the Ground Lease in the event of a default in the repayment of the public finance bonds. Plaintiffs further contend that the unambiguous and clear language of the Certificate supports this conclusion. Plaintiffs contended at oral argument that their acts have not prejudiced Mohawk and therefore the Ground Lease subordination clause should be enforced.

## DISCUSSION

### DECLARATORY JUDGMENTS

■ Bankruptcy courts may issue declaratory judgments pursuant to Fed. R.Bankr.P. 7001(9). A bankruptcy court's discretion to issue declaratory judgments is subject to the constraints of the Act and the court's jurisdictional limits. *See In re U.S. Lines, Inc.*, 169 B.R. 804, 812 (Bankr. S.D.N.Y.1994).

■■■ The Act permits a court to render a declaratory judgment in a case of "actual controversy." *See* 28 U.S.C. § 2201(a). The District Court for the Northern District of New York recently explained that a proceeding presents an actual controversy " 'if it would be useful in clarifying and settling legal relations in the case, or if it would terminate the uncertainty, insecurity, and controversy that brought about the proceeding.' " *See Fusco v. Rome Cable Corp.*, 859 F.Supp. 624, 630 (N.D.N.Y.1994) (citing *Albradco, Inc. v. Bevona*, 982 F.2d 82, 87 (2d Cir.1992); *Continental Cas. Co. v. Coastal Sav. Bank.*, 977 F.2d 734, 737 (2d Cir.1992)). Thus, an "actual controversy" exists for purposes of the Act if Plaintiffs satisfy either of the above criteria. *Id.* The *Fusco* court noted that, "[the] Act has 'a broad, remedial purpose and, therefore, should be construed liberally.' " *Fusco v. Rome Cable Corp.*, *supra*, 859 F.Supp. at 629 (quoting *Akzona Inc. v. E.I. duPont de Nemours & Co.*, 662 F.Supp. 603, 615 (D.Del.1987)).

■■■ Generally, "it is the situation at the time suit was filed that establishes the *vel non* of an actual controversy." *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 980 (2d Cir.1993). The *Fusco* court noted, however, that there is case authority supporting the view that on a summary judgment motion a court is permitted to look beyond the complaint to determine the existence of an "actual controversy". *See Fusco v. Rome Cable Corp.*, *supra*, 859 F.Supp. at 631 n. 8 (citations omitted).

Examination of the complaint in the matter *sub judice* demonstrates that the instant proceeding presents an "actual controversy". An actual controversy exists in that Mohawk has expressly denied Plaintiffs' interpretation of the subordination provision contained in the Ground Lease and the enforceability of the same. *See* Mohawk's Amended Answer at ¶ 22–24, 27–28. Thus, the resolution of this adversary proceeding will help clarify and settle the legal relations of the parties. Further, a resolution of the within matter will help terminate uncertainty as to Debtor's ability to reorganize. Arguably, until a resolution of the within matter is reached, no relief will come to the many parties involved in this bankruptcy case.

The Court is unpersuaded by Mohawk's argument that until the Ground Lease is formally assumed, it does not constitute an enforceable contractual agreement and thus an actual controversy does not exist.[2] As support for its argument, Mohawk relies on the following passage from *In re Orion Pictures, Corp.*: "Although several bankruptcy courts have read § 365 as authorizing them to resolve questions involving the validity of contracts before deciding whether to permit the trustee or debtor-in-possession to assume the contracts, . . ., we believe that nothing in § 365 provides such authorization." *See* Mohawk Memo at 7–8 (citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1099 (2d Cir.1993)).

Mohawk's reliance on the *Orion* language is misplaced. The Second Circuit's focus was whether contract disputes could be resolved within the context of a motion to assume pursuant to Code § 365. The *Orion* court concluded that a separate adversary proceeding was required for the resolution of contract disputes. *See In re Orion Pictures Corp.*, *supra*, 4 F.3d at 1099.

The Second Circuit, however, left to the bankruptcy court's discretion when to hear the related adversary proceeding. *Id.* (". . . no prohibition on bankruptcy courts, for reasons of efficiency, hearing motions to assume and trying related adversary proceedings simultaneously"). Thus, *Orion* did not stand for the proposition that until formal assumption there can be no justiciable controversy with respect to the underlying lease or contract. By commencing the within action, in fact, Plaintiffs have simply followed the Second Circuit's mandate of treating the adversary proceeding and the motion to assume as conceptually distinct proceedings. *Id.*

---

**2.** As the parties *have not alleged* that the Ground Lease is *not* a "true" or "bona fide" lease, the Court assumes, for purposes of this Memorandum–Decision, that the Ground Lease is subject to assumption pursuant to Code §§ 365 or 1124(b). *See e.g. In re PCH Associates,* 804 F.2d 193 (2d Cir.1986) (holding that the disputed ground lease was not a "true" or "bona fide" lease subject to assumption).

## JURISDICTION

■ In arguing that the Court does not possess subject matter jurisdiction over the within matter, Mohawk once again relies on the fact that the Ground Lease has not been formally assumed. Mohawk contends that the estate does not take title to an unexpired lease or executory contract until it is formally assumed. Mohawk erroneously concludes that absent formal assumption, the Ground Lease does not constitute an asset of the estate and thereby deprives the Court of subject matter jurisdiction. Mohawk also argues that even if the Court has subject matter jurisdiction, the instant dispute is a non-core matter and thus this Court cannot issue any final determinations.

The jurisdictional provisions of the Code are found in two sections of the United States Code, namely, 28 U.S.C. §§ 1334 and 157. The district court in which a bankruptcy case is commenced or is pending has "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." See 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157(a) and Local Rule 76.1, the District Court for the Northern District of New York refers all bankruptcy cases and proceedings under title 11 or arising in or related to a case under title 11 to the Bankruptcy Judges for the District.

Bankruptcy proceedings may be grouped into three categories. See In re M. Paolella & Sons, Inc., 85 B.R. 965, 969 (Bankr. E.D.Pa.1988), aff'd, 161 B.R. 107 (E.D.Pa. 1993), aff'd, 37 F.3d 1487 (3rd Cir.1994). The first category is comprised of core proceedings, over which bankruptcy judges may enter final orders. See 28 U.S.C. § 157(b)(1). Non-core, related proceedings constitute the second category. See 28 U.S.C. § 157(c)(1). Bankruptcy judges may only hear and submit proposed findings of fact and conclusions of law to the district court for these proceedings.[3] Id. The third category includes non-core, unrelated proceedings over which the bankruptcy court lacks any jurisdiction. See In re M. Paolella & Sons, Inc., supra, 85

B.R. at 969 (citations omitted). A determination that a matter is a core proceeding or a non-core, related proceeding, a fortiori, establishes subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157.

In passing the Bankruptcy Amendments and Federal Judgeships Act of 1984 ("BAFJA"), Congress created a dichotomy between core and non-core matters. See In re S.G. Phillips Constructors, Inc., 45 F.3d 702, 704–705 (2d Cir.1995). Without defining the term "core", Congress provided a non-exhaustive list of core proceedings. See 28 U.S.C. § 157(b)(2).

■ The Second Circuit has held that if a particular type of claim, such as the present dispute, is not explicitly mentioned in 28 U.S.C. § 157(b)(2), then a determination of whether a matter is core depends on the nature of the proceeding. In re S.G. Phillips Constructors, Inc., supra, 45 F.3d at 707. Whether the cause of action has a federal or state basis is not dispositive as to the core/non-core determination. See In re Manville Forest Products Corp., 896 F.2d 1384, 1389 (2d Cir.1990) (citations omitted); In re Leco Enterprises, Inc., 125 B.R. 385, 388 (S.D.N.Y. 1991) (criticized on other grounds by In re Orion Pictures Corp., Inc., supra, 4 F.3d at 1102). Similarly, the fact that a party has failed to submit a proof of claim does not render the matter non-core. In re Leco Enterprises, Inc., supra, 125 B.R. at 389. Rather, the bankruptcy court must focus its inquiry on whether the essence of the proceeding is " 'at the core of the federal bankruptcy power.' " In re S.G. Phillips Constructors, Inc., supra, 45 F.3d at 707 (quoting Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); In re Bennett, 154 B.R. 126, 138 (Bankr.N.D.N.Y.1992) ("... it is the nature of the claim which determines whether a matter is core ..." (citation omitted)).

The concept of distribution has long been recognized as one of the essential and core elements of bankruptcy law. See In re Central Funding Corp., 75 F.2d 256, 260 (2d

---

**3.** If the parties consent, a bankruptcy judge may enter final orders in non-core, related proceedings. See 28 U.S.C. § 157(c)(2).

Cir.1935) ("Bankruptcy laws are designed primarily to distribute equitably the property of a debtor among his creditors"); Report of Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 137, 93rd Cong., 1st Sess. 75 (1973), U.S.Code Cong. & Admin.News 1973 2252; *In re Persky,* 134 B.R. 81, 96–98 (Bankr.E.D.N.Y.1991) (citations omitted). The concept of distribution is embodied in, *inter alia,* Code § 510 which governs both contractual and equitable subordination causes of action. *See e.g.* Code § 510(b) ("For the purpose of distribution under this title ..."); Code § 510(c)(1) ("Notwithstanding subsections (a) and (b) ... the court may—... subordinate for purposes of distribution ...").[4]

■ Resolving subordination disputes is part of the process of ordering the estate for purposes of distribution and is integral to the restructuring of debtor-creditor and creditor-creditor relations. Accordingly, a cause of action based on Code § 510 concerns essential bankruptcy law functions, namely, the administration and distribution of the bankruptcy estate.

It is important to note that a cause of action based on Code § 510(a), such as the instant proceeding[5], is significantly different from traditional *"Marathon* type" non-core matters. For example, unlike the present dispute, a traditional *"Marathon* type" non-core adjudication involves a debtor's prepetition contract claim requiring a factual determination as to the liquidated amount of a liability. *See e.g. Northern Pipeline Construction Co. v. Marathon Pipe Line Co., supra,* 458 U.S. 50, 102 S.Ct. 2858; *In re Orion Pictures Corp., supra,* 4 F.3d at 1097 (debtor claimed anticipatory breach of pre-petition contract and sought specific performance, or, in the alternative, $77 million in damages). The present matter, however, does not implicate a breach of a prepetition contract and a determination of damages. Unlike a cause of action which seeks to augment the bankruptcy estate, the purpose of the instant proceeding is to reorder debtor-creditor and creditor-creditor relations and compromise the extent and timing of a future distribution.

Moreover, the resolution of the within dispute involves, among others, Debtor, TIAA, arguably the lead creditor in the bankruptcy case, Key Trust, as the indenture trustee, and Mohawk, the owner of the real property which is the subject of the Ground Lease. Arguably, these are among the most active parties in this Chapter 11 case. Therefore, the within dispute concerns essential bankruptcy functions, namely, the ordering and distribution of the estate, and it involves some of the central participants in this reorganization effort. As such, this Court adopts Bankruptcy Judge Brozman's well articulated holding in *In re Best Products,* 168 B.R. 35, 66–67 (Bankr.S.D.N.Y.1994), *appeal dismissed,* 177 B.R. 791 (S.D.N.Y.1995):

"... [I]t is hard to imagine an issue that is more at the heart of the bankruptcy process than is this. Enforcement of a contractual subordination agreement clearly involves the adjustment of the debtor-creditor relationship, determinations of the priority of liens, and administration of the estate and so falls within the ambit of 28 U.S.C. § 157(b)(2)(A), (K), and (O)." *see also In re Pittsburgh Cut Flower, Inc.,* 118 B.R. 31, 34 (Bankr.W.D.Pa.1990).[6]

---

**4.** Code § 510(a) provides that, "A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law." Although the phrase "for the purpose of distribution" is not explicitly mentioned in Code § 510(a), the phrase is impliedly adopted therein. *See e.g.* Code § 726(a) (prefacing the distribution framework with the phrase "except as provided in section 510 of this title") Code § 1129(b)(1) ("Notwithstanding section 510(a) ...").

**5.** Although not explicitly referred to in the Complaint, Plaintiffs' narrative makes it clear that they seek relief pursuant to Code § 510(a).

**6.** It is important to note that this Court's holding relies on the language of Code § 510 and its relationship to essential bankruptcy functions, namely, the equitable distribution and administration of the estate. In heeding the Second Circuit's admonition of not creating an "exception to *Marathon* that would swallow the rule," the Court explicitly limits its holding to Code § 510 causes of action. *See In re Orion Pictures Corp., supra,* 4 F.3d at 1102 (criticizing *In re Leco Enterprises, Inc., supra,* for relying on the following reasoning: a traditional prepetition contract dispute was core because if the claim was collected it would benefit the estate or the creditors of the estate and because the prompt resolution

Mohawk argues that the present matter is distinguishable from *In re Best Products* and *In re Pittsburgh Cut Flower.* Mohawk contends that the above cases involved competing claims to the allocation of the debtor's property and the administration of the debtor's estate. *See* Mohawk Supp. Memo at 7. In each case the debtor had submitted a proposed plan of reorganization that would disparately treat creditors. *Id.* Mohawk argues that these dispositive factors are not present in Debtor's case.

On or about June 1, 1995, Debtor and TIAA jointly submitted an Amended Disclosure Statement and an Amended Plan of Reorganization. Similar to the plans submitted in *In re Best Products* and in *In re Pittsburgh Cut Flower,* Debtor and TIAA propose a disparate treatment of creditors. Debtor's and TIAA's proposed treatment of creditors hinges on a finding that their interpretation of the Ground Lease subordination clause is valid and enforceable. Thus, as with *In re Best Products* and in *In re Pittsburgh Cut Flower,* the present subordination clause dispute involves competing claims to the allocation and administration of the bankruptcy estate.

The fact that Debtor's and TIAA's proposed Amended Plan of Reorganization was submitted after the commencement of the adversary proceeding, and indeed after the motion for summary judgment, is not dispositive as to whether the matter is core. As noted above, the Second Circuit has held that the determinative factor is the nature of the proceeding. For the reasons set forth above, the nature of this proceeding goes to the core of the bankruptcy process.

Finally, the Court notes that throughout this bankruptcy case Mohawk has acted in a manner that was consistent with acceptance of this Court's jurisdiction. *See In re S.G. Phillips Constructors, Inc.,* 45 F.3d at 707, 708 (considering creditor's prior actions in bankruptcy case for purposes of jurisdiction). For example, Mohawk "vigorously objected" to the global settlement stipulation entered into on or about December 30, 1994. *See* Mohawk Memo at 4. In addition, Mohawk entered into a stipulation, approved by this

Court, extending Debtor's time to assume the Ground Lease. More recently, Mohawk objected to Debtor Fourth Branch's and TIAA's Disclosure Statement which was subsequently amended and approved by this Court on June 1, 1995. Further, on June 22, 1995, Mohawk filed a proof of claim for a priority debt in the estimated amount of $66,091.30 and objected to Debtor's and TIAA's First Amended Plan of Reorganization.

### *SUMMARY JUDGMENT*

■ Fed.R.Bankr.P. 7056(a) allows a plaintiff to move for summary judgment at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party. The Advisory Committee Note states that the defendant is afforded the 20 day window "in the interest of more expeditious litigation" while giving "the defendant an opportunity to secure counsel and determine a course of action." *See* The Advisory Committee Note to the 1948 Amendment to Rule 56(a), 5 F.R.D. 433, 474. However, pursuant to Fed.R.Bankr.P. 9006(c) the Court may, for cause, shorten the time for when an act is required or allowed to be done. The Court is prohibited from reducing the time for taking action under certain bankruptcy rules, however, Fed.R.Bankr.P. 7056 is not one of them. *See* Fed.R.Bankr.P. 9006(c)(2).

In the matter *sub judice,* Mohawk has not filed a summary judgment motion. Further, Plaintiffs filed their Fed.R.Bankr.P. 7056 motion prior to the expiration of the 20 day answer period and on less than the ten days notice required by Fed.R.Bankr.P. 7056(c). Nevertheless, in its discretion, the Court finds that sufficient cause exists to consider Plaintiffs' motion for summary judgment at this time. As Mohawk admits, negotiation over the Ground Lease subordination clause has been taking place since November 1994. *See* Mohawk Memo at 4. Thus, Mohawk has had both an opportunity to secure counsel and determine a course of action. The Court also notes that the parties were afforded additional time to submit memoranda of law

of the adversary proceeding was essential to the administration of the estate).

after oral argument. Further, a resolution of this motion is necessary in order to effectuate a plan of reorganization prior to July 31, 1995, the "blow-up" date of the global settlement stipulation. The Court also finds that a resolution of the instant motion is in the best interest of the estate.

 Having cleared the procedural and jurisdictional hurdles, the Court next addresses the merits of Plaintiffs' summary judgment motion. The Court begins by drawing a distinction between the interpretation of the subordination clause and the enforcement of the clause. Mohawk points out that, "Even assuming that § 8.15 of the Ground Lease subordinates Mohawk's right to rental payment ... New York courts are zealous in the protection of subordinate parties that might be harmed by the acts of senior parties." [7] Mohawk's Memo at 16.

### (1) Contract Interpretation

 The Second Circuit has recently clarified the general rule that "when a contract is ambiguous, its interpretation becomes a question of fact and summary judgment is inappropriate." *Mellon Bank, N.A. v. United Bank Corp. of New York*, 31 F.3d 113, 116 (2d Cir.1994) (citations omitted). It is now established within this circuit that ambiguity, standing by itself, is not enough to preclude summary judgment. *Id.* When contract terms are "susceptible to conflicting constructions *and* when there is also relevant extrinsic evidence of the parties' intent, the meaning of the provisions becomes an issue of fact barring summary judgment." *Williams & Sons Erectors v. South Carolina Steel*, 983 F.2d 1176, 1183 (2d Cir.1993) (emphasis in original) (citations omitted). However, absent extrinsic evidence of intent, ambiguity itself does not present an issue of fact, but an issue of law for the Court to decide. *Id.* at 1184.

The Second Circuit has defined ambiguous language as "that which is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Seiden Associates, Inc. v. ANC Holdings, Inc.*, 959 F.2d 425 (2d Cir. 1992) (quoting *Eskimo Pie Corp. v. White-lawn Dairies, Inc.*, 284 F.Supp. 987, 994 (S.D.N.Y.1968)) (citations omitted).

The disputed subordination clause, which is embodied in § 8.15 of the Ground Lease, unequivocally states "Lessor [Mohawk] agrees that the Leasehold Mortgage to Key ... and all obligations secured thereby (the "Obligations") shall have priority in right and remedy over any claims, rights or interests for the payment of money which the Lessor has by virtue of this Lease ..." The Court next turns its attention to Article III of the Ground Lease which enumerates the events constituting "default". Under Ground Lease § 3.02(A) Debtor's "failure to pay any installment of moneys due pursuant to Article II [Lease Payments] hereof within 30 days after notice ... constitutes a 'default.'" However, the final paragraph of Ground Lease § 3.02 states that "*Subject to Section 8.15 below [subordination provision]*, upon Lessee's Default ... if such Default remains uncured, the Lessor may ... declare that this Lease and all rights granted herein shall cease and terminate, and the Leasehold Estate shall automatically extinguish." (emphasis added). The integration of § 8.15 and the last paragraph of § 3.02 leads to the inescapable conclusion that Mohawk is entitled to exercise its rights upon default of payments subject to the priority position of the Leasehold Mortgagee.[8]

---

7. This Court looks to New York's choice of law rules to determine what body of substantive law governs the interpretation of the Ground Lease and related documents. Generally, under the autonomy principle, choice of law provisions are determinative as to which state's law applies. *See Joy v. Heidrick & Struggles, Inc.*, 93 Misc.2d 818, 821, 403 N.Y.S.2d 613, 614 (N.Y. City Civ. Ct.1977). Pursuant to Ground Lease § 8.04, the parties selected New York law. Further, in argu-

ing state law the parties have exclusively relied on New York law. Thus, absent any reason to disturb the parties' choice, this Court shall apply New York law where applicable.

8. *See* Discussion at Oral Argument at Court's Regular Motion Term in Syracuse, New York on April 4, 1995. Judge: If they [Debtor] are not in arrears then they can pay the rent to Mohawk, but if they are in arrears on any of those obli-

Ground Lease § 8.15 is not a contingent subordination agreement whereby Mohawk will not receive any payments if Debtor defaults on the financing bonds. Rather, Ground Lease § 8.15(a) provides that "If Lessee is in arrears in any of the Obligations, Lessee shall bring all such Obligations current before Lessee commences to pay Lessor any due amounts due Lessor." Consequently, absent Key Trust's possession of the project, Mohawk is entitled to its rent payments once Debtor cures all arrearages on its obligations secured by the Leasehold Mortgage. *Compare* Ground Lease § 8.15(b) (where indenture trustee takes possession, Mohawk gets paid only if the project generates profits in excess of *all sums due Trustee* ).

Mohawk attempts to rebut this conclusion by arguing that "three years after the execution of the Ground Lease, the parties signed a number of documents pertaining to the permanent financing for the project facility." Mohawk Memo at 11. Among these documents is the Certificate dated July 13, 1989. Mohawk argues that the Certificate enables it to declare a "default" upon the occurrence of a condition specified in Article III of the Ground Lease. *See* Mohawk's Memo at 13. One such condition constituting "default" is the non-payment of rent to Mohawk. *See* Ground Lease § 3.02(A). After such "default," Mohawk may issue a Notice of Default to the indenture trustee, Key Trust. *See* Mohawk's Memo at 13–14. Key Trust is then "to notify Mohawk of its election to acquire possession of the project, foreclose on its lien, or foreclose upon debtor's or Mohawk's interest in the Ground Lease." *Id.* at 14.

Mohawk submits that if Key Trust takes possession of the project, the Certificate mandates that "it shall pay or cause to be paid all sums which become due to Mohawk under the Ground Lease." *Id.* (citing Certificate § 1.11(H)(2)(a)). In the alternative, if Key Trust elects not to take possession or foreclose on its interests, then Mohawk is at

liberty to terminate the Ground Lease. *Id.* Mohawk submits that the Ground Lease subordination provision does not preclude Mohawk from exercising its rights enumerated in the Certificate.

In drawing all inferences against the moving party, the Court finds that the interrelationship of Certificate § 1.11(H) and Ground Lease § 8.15 is susceptible to different interpretations and, as such, is ambiguous. *See Williams & Sons Erectors v. South Carolina Steel, supra,* 983 F.2d at 1184. However, as noted above, ambiguity by itself is not enough to preclude summary judgment. The Court must also be presented with relevant extrinsic evidence of the parties' intent in order for there to be an issue of fact. *See e.g. Mellon Bank, N.A. v. United Bank Corp. of New York, supra,* 31 F.3d at 116. Mohawk has not presented any such evidence supporting its interpretation of Certificate § 1.11(H) and Ground Lease § 8.15. Therefore, resolution of any ambiguity is an issue of law for the Court to decide. *See Williams & Sons Erectors v. South Carolina Steel, supra,* 983 F.2d at 1184.

This Court finds Mohawk's position untenable. Mohawk relies on Certificate § 1.11(H) to essentially argue as follows: (1) non-payment of rent is a default pursuant to which Mohawk may issue a Notice of Default; (2) Upon the receipt of a Notice of Default, Key Trust may take possession of the Mohawk facility; (3) If Key Trust takes possession, then Mohawk is entitled to all sums due under the Ground Lease; (4) If the Key Trust does not take possession, then Mohawk may simply terminate the Ground Lease. Under Mohawk's interpretation of Certificate § 1.11(H), Mohawk would effectively "write out" the subordination provision of Ground Lease § 8.15. However, the Certificate neither expressly amends nor waives the subordination agreement.[9] This is in stark contrast to other provisions of the Ground Lease which were expressly amend-

gations [Leasehold Mortgage and all obligations secured thereby], Mohawk subordinates its right to payment of its rent. Mr. Rogers (Mohawk's Counsel): That is correct your Honor, but then we turn to the Certificate ...

9. In fact, as Plaintiffs point out, the Certificate reaffirms the subordination provision by making reference to it. *See* Plaintiffs' Memo at 6 (citing to Certificate § 1.11(E)).

ed or waived. *See e.g.* Certificate § 1.11(B), (I), (J), (K), and (L).

■■■ It is well established that interpretations that give a reasonable and effective meaning to all the terms of a contract are preferred. *See Rothenberg v. Lincoln Farm Camp, Inc.,* 755 F.2d 1017, 1019 (2d Cir.1985) (citations omitted); *Sunrise Mall Assoc. v. Import Alley of Sunrise Mall, Inc.,* 211 A.D.2d 711, 621 N.Y.S.2d 662 (N.Y.A.D.2d Dept.1995). Further, Certificate § 1.11(H) explicitly preserves the rights that the Leasehold Mortgagee has under the Ground Lease. *See* Certificate § 1.11(H) ("in the event of ... a default under the Ground Lease and *in addition to any other rights that the Trustee, as a Leasehold Mortgagee, may have under the Ground Lease ..."* (emphasis added)). Among the rights that the Leasehold Mortgagee has under the Ground Lease is the right to enforce the subordination provision. Therefore, the Court rejects Mohawk's interpretation and finds that the Certificate did not "write out" the Ground Lease subordination clause.

Resort to extrinsic evidence of industry custom and practice provides further support for the Court's conclusion. *Christiania General Ins. v. Great American Ins.,* 979 F.2d 268, 274 (2d Cir.1992). Subordination agreements often arise in a situation where the owner of land leases the land to a developer under a long term ground lease.[10] Generally, it is understood that the developer will cause improvements to be erected on the land. To effectuate this end it is incumbent upon the owner to subordinate his interest in order to secure construction funds borrowed from a third party lender. It is important to note that often the third party lender will not be forthcoming absent the owner's agreement to subordinate.[11]

The owner of the land, although he is placing his interest in the land in a position junior to the construction lender, neverthe-less believes that there are benefits to such an agreement. For example, the owner avoids a sale of the land and attendant tax consequences arising out of a sale. Also, the land is embellished with a permanent improvement which the owner or his heirs will eventually own when the term of the ground lease expires.

Pursuant to the Ground Lease, Mohawk, as the owner, leased its land to Debtor for a term of 30 years. *See* Ground Lease at § 1.02. Mohawk retains its ownership of the land. Debtor, on the other hand, offered its leasehold interest as security for a construction loan. Key Trust, as indenture trustee for the construction lender TIAA, is the Leasehold Mortgagee. However, as is often the case, additional security was required for the construction loan. Thus, Mohawk was required to subordinate its fee interest.

As subordination clauses are often the linchpin to complex financing transactions such as the present matter, no reasonable trier of fact drawing all inferences in favor of Mohawk could find that it was the actual intent of the parties to render the subordination clause essentially superfluous. *See Sunrise Mall Assoc. v. Import Alley of Sunrise Mall, Inc., supra,* 621 N.Y.S.2d at 662 (give practical interpretation such that parties' reasonable expectations are realized); *see also Christiania General Ins. v. Great American Ins., supra,* 979 F.2d at 274. Examining Certificate § 1.11(H) and Ground Lease § 8.15 in the context of the entire integrated agreement between the parties, the Court finds that Mohawk's right to payment and right to termination for Debtor's failure to pay rent installments is subordinate in priority to Key Trust, as Leasehold Mortgagee.

(2) *Enforcement of Subordination Provision*

■■■ Mohawk argues, in the alternative, that if its rights are found to be subordinate,

---

10. Some useful commentaries on subordination clauses include: Hugh B. Lambe, Enforceability of Subordination Agreements, 19 Real Prop. & Tr.J. 631 (1984); James L. Lopes, Contractual Subordinations and Bankruptcy, 97 Banking L.J. 204 (1980); Dee M. Calliger, Subordination Agreements, 70 Yale L.J. 376 (1961).

11. The Second Circuit observed that subordinated debts involve "literally billions of dollars" and noted that a reduction in lenders' willingness to participate in such financing would be to "the detriment of the entire business community." *In re Credit Indus. Corp.,* 366 F.2d 402, 410 (2d Cir.1966).

Plaintiffs' acts while negotiating the global settlement stipulation prejudiced Mohawk such that the subordination clause should no longer be enforced. Mohawk submits that it is entitled to discovery on this issue.

 The Court notes that under appropriate circumstances summary judgment is a useful tool to expeditiously conclude litigation. *See Quinn v. Syracuse Model Neighborhood Corporation,* 613 F.2d 438, 444 (2d Cir.1980). However, summary judgment is also a drastic procedural weapon whose prophylactic function serves to cut off a party's right to present its case. *See Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1320 (2d Cir.1975) (citing *Donnelly v. Guion,* 467 F.2d 290, 291 (2d Cir.1972)). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Bankr.P. 7056(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994).

The Ground Lease explicitly states that "nothing herein contained ... shall be construed to permit Lessee to impair in any way Lessor's rights to receive Lease payments ..." Ground Lease § 6.02. Mohawk argues that pursuant to the global settlement stipulation TIAA postponed receiving payments from Debtor. Further, Mohawk argues that the apparent consideration flowing from Debtor, its principals, TIAA, and Key Trust, in negotiating the global settlement stipulation is deserving of further investigation.

The Court finds that Mohawk's affidavits and documents demonstrate that a material fact is in dispute, namely, whether Plaintiffs' acts prejudiced Mohawk's rights as a subordinate party. Thus, Mohawk is deserving of an opportunity to conduct further discovery in an effort to determine whether Plaintiff's

rights under the subordination clause may be limited.[12]

Accordingly, it is hereby

ORDERED that Plaintiffs' motion pursuant to Fed.R.Bankr.P. 7056 for summary judgment on Plaintiffs' complaint is partially granted as more fully set forth above; and it is further

ORDERED that Plaintiffs' motion pursuant to Fed.R.Bankr.P. 7056 for summary judgment on Plaintiffs' complaint is denied, insofar as a material issue exists as to the enforceability of the Ground Lease subordination clause, due to the allegedly prejudicial terms of the global settlement stipulation and other conduct by Plaintiffs.

---

12. This Memorandum–Decision does not resolve whether Mohawk is entitled to a jury trial as demanded in its amended answer. For reasons of judicial economy, the Court finds that this issue is best left for such time after further discovery has been conducted and a trial seems imminent.