In re LECO ENTERPRISES, INC., Lord International, Inc., Halfhill Electrical Company, Ltd., Lord Electric Company, Inc., Debtor.

**Kenneth P. SILVERMAN, Plaintiff.**

v.

**U.W. MARX, INC., Defendant.**

Bankruptcy Nos. 89B10949 to 89B10952.
Adv. No. 90–6552A.
No. M–47.

United States District Court,
S.D. New York.

April 5, 1991.

---

E.P. Cimini, Jaspan, Ginsberg, Ehrlich, Schlesinger, Silverman & Hoffman, Garden City, N.Y. for plaintiff.

Philip R. Mann, New York City, for defendant.

## MEMORANDUM AND ORDER

BRIEANT, Chief Judge.

On May 1, 1989, Leco Enterprises, Inc., an electrical contractor, and its procedurally consolidated subsidiaries (collectively referred to as the "Debtor") filed a voluntary bankruptcy petition pursuant to Chapter 7 of Title 11 of the United States Code. On February 3, 1990, Kenneth P. Silverman, plaintiff herein, was appointed the Chapter 7 Trustee.

By motion fully submitted to this Court for decision on February 5, 1991 after a hearing, defendant U.W. Marx, Inc. moves for withdrawal of the reference pursuant to 28 U.S.C. § 157(d), to permit a jury trial of plaintiff's contract claim against it to be held before a district judge, and for a change of venue from the United States District Court for the Southern District of New York to the Northern District of New York, pursuant to 28 U.S.C. § 1412.

The plaintiff contends, and we assume for purposes of this motion, that U.W. Marx, Inc. and E.G. May Division, Inc., a division of Lord Electric Company, entered into a contract on October 16, 1986 whereby the Debtor agreed to perform electrical subcontracting services on behalf of defendant at the Veterans Administration Medical Center in Castle Point, Dutchess County, New York. Plaintiff claims that the reasonable value of the work, labor and services rendered and the materials furnished and installed which remains unpaid by U.W. Marx on this contract is $101,-098.89.[1] Demand was made of defendant for payment, but payment was refused. Silverman Aff., ¶ 8. Plaintiff further claims that 99% of the contract work was completed at the time the Debtor filed its petition in bankruptcy and ceased work on the Veterans Administration project.

Defendant denies the amount demanded is owed pursuant to the contract and asserts a set-off or recoupment based upon its alleged cost to complete the project and to pay the legitimate claims of subcontractors and materialmen of the Debtor. Defendant has not filed a proof of claim for this purported set-off; Thus, there has been no consent to bankruptcy court jurisdiction.

■ By this motion, defendant challenges the federal bankruptcy court's jurisdiction to adjudicate what it characterizes as a state law contractual dispute or a non-core proceeding. Specifically, U.W. Marx contends that the adversary proceeding at issue here involves a state law contract claim that does not fall within the representative list of core proceedings delineated in 28 U.S.C. § 157(b)(2), but is merely "related to" the bankruptcy action, as a non-core matter, under Section 157(c)(1).

Our full understanding of the legal issue presented in this case requires reference to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), in which the Court held unconstitutional a fundamental jurisdictional provision of the Bankruptcy Act of 1978, 28 U.S.C. § 1471. The issue considered in *Marathon* was "whether the Bankruptcy Act of 1978 violate[d] the command of Art. III that the judicial power of the United States must be vested in courts whose judges enjoy the protections and safeguards specified in that Article." 458 U.S. at 62, 102 S.Ct. at 2867. Specifically, the Court considered whether a bankruptcy court possessed the constitutional authority to adjudicate a debtor's pre-petition contract claim.

The plurality in *Marathon* held that Section 1471 of Title 28 of the United States Code violated Article III of the Constitution to the extent it granted bankruptcy courts the jurisdictional authority to adjudicate private rights arising under state law. The Court reasoned that while Congress could grant bankruptcy courts the authority to issue final orders in proceedings embracing "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power," *id.* at 71, 102 S.Ct. at 2871, it could not grant bankruptcy courts the right to issue final orders in proceedings involving private rights. Justice Rehnquist and Justice O'Connor concurred in the judgment on the narrower ground that the issues in the law suit arose "entirely under state law." *Id.* at 90, 102 S.Ct. at 2881.

Since *Marathon*, the Supreme Court has adopted a somewhat restricted view of that decision. *Thomas v. Union Carbide Agri-*

---

**1.** This sum represents the difference between the Contract price of $866,694.71 (including change orders) and $764,780.71 previously paid by U.W. Marx to Lord. *See* Def. Answer [To Motion To Extend Trustee's Time to Assume or Reject Executory Contract], at 3, fn. 1.

*cultural Products Co.,* 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985); *Commodity Futures Trading Commission v. Schor,* 478 U.S. 833, 853, 106 S.Ct. 3245, 3258, 92 L.Ed.2d 675 (1986) ("[T]here is no reason inherent in separation of powers principles to accord state law character of a claim talismatic power in Article III inquiries."). In *Thomas,* the Court upheld the power of non-Article III Arbitrators of the Environmental Protection Agency to determine disputes arising under the Federal Insecticide, Fungicide and Rodenticide Act, reversing a district court decision holding that Act unconstitutional on the basis of *Marathon.*

In an opinion written by Justice O'Connor, who joined in the *Marathon* plurality, the *Thomas* Court noted that in *Marathon* it "was unable to agree on the precise scope and nature of Article III's limitations." 473 U.S. at 584, 105 S.Ct. at 3334. The Court cautioned that its holding in *Marathon* "establishes only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review." *Id.*

In an effort to cure the constitutional defect in Section 1471, Congress amended the jurisdictional provision of the Bankruptcy Act in 1984. The new jurisdictional provision distinguishes between "core" proceedings which a bankruptcy judge has full statutory authority to adjudicate and "non-core" proceedings which a bankruptcy judge has the power only to submit proposed findings of fact and conclusions of law to the district court. 28 U.S.C. §§ 157(b) and (c).

Section 157(b)(1) of Title 28 of the United States Code, 28 U.S.C. § 157(b)(1), confers on the federal bankruptcy court jurisdiction to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11...." 28 U.S.C. § 157(b)(1). Pursuant to this section, a bankruptcy court "may enter appropriate orders and judgments." *Id.* Section 157(b)(2) provides a representa-

tive list of core proceedings. This section provides in pertinent part:

> Core proceedings include, but are not limited to—
>
> (A) matters concerning the administration of the estate;
>
> .     .     .     .     .
>
> (E) orders to turn over property of the estate; ...
>
> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship....

28 U.S.C. § 157(b)(2). A review of the legislative history of the statute reveals "that Congress intended that 'core proceedings' would be interpreted broadly...." *In re Arnold Print Works, Inc.,* 815 F.2d 165, 168 (1st Cir.1987).

■ In contrast, non-core proceedings are those which are "otherwise related to the case under title 11." § 157(b)(3). "In such proceeding, the bankruptcy judge shall submit proposed findings of facts and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." § 157(c)(1). Thus, if the proceeding is non-core and the parties have not consented, only the district court may enter a final judgment.

■ The fact that a claim in a bankruptcy matter raises issues of state, rather than federal, law does not by itself determine that it is non-core, rather than core. *See* 28 U.S.C. § 157(b)(3) ("determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law."). *See also, In re Ben Cooper, Inc.,* 896 F.2d 1394, 1399 (2d Cir.1990), *cert. granted* — U.S. ——, 110 S.Ct. 3269, 111 L.Ed.2d 779 (1990), *vacated and remanded,* — U.S. ——, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990) (Congress intended a narrow reading of *Marathon* ). Thus, the mere fact that U.W. Marx's claim raises

issues of state contract law does not preclude a finding that the adversary proceeding is core.

Courts which have considered the issue of whether an action to recover a pre-petition account receivable is a core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(A), (E) or (O) have reached contrary conclusions.

On the one hand, some courts have concluded that actions to collect on an account receivable are not core proceedings. *See In re Astrocade, Inc.*, 79 B.R. 983 (Bankr. S.D. Ohio 1987) (action to collect accounts receivable was "related proceeding," rather than "core proceeding"); *In re P & P Oilfield Equipment, Inc.*, 71 B.R. 621 (Bankr. D.Colo.1987) (collection of account receivable is not "core proceeding"); *In re Nell*, 71 B.R. 305 (D.Utah 1987) (suit on pre-petition contract or account receivable is not a matter at core of bankruptcy); *In re Epi-Scan, Inc.*, 71 B.R. 975 (Bankr.D.N.J.1987) (action to collect pre-petition account receivables was "related proceeding" for bankruptcy court); *In re Elegant Concepts, Ltd.*, 67 B.R. 914 (Bankr.E.D.N.Y. 1986) (contract-type action not "core proceeding"); *In re B & L Oil Co.*, 46 B.R. 731 (D.Colo.1985) (action to collect account receivable is non-core proceeding); *In re Atlas Automation, Inc.*, 42 B.R. 246 (Bankr. E.D.Mich.1984) (non-core proceeding).

On the other hand, many courts have concluded that such actions are core proceedings despite the presence of state law issues. *See In re Allegheny, Inc.*, 68 B.R. 183 (Bankr.W.D.Pa.1986) (a claim for an overdue account constitutes a core proceeding); *In re Windsor Communications Group, Inc.*, 67 B.R. 692 (Bankr.E.D.Pa. 1986) (accounts receivable proceedings fall within 28 U.S.C. §§ 157(b)(2)(A), (E) and (O)); *In re National Equipment and Mold Corporation*, 60 B.R. 133 (Bankr.N.D.Ohio 1986) (suit by debtor to collect on an account receivable constitutes core proceeding under Sections 157(b)(2)(B), (E) and (O)); *In re Ellwood City Iron & Wire Co.*, 59 B.R. 53 (Bankr.W.D.Pa.1986) (debtor's action to collect accounts receivable is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(B)); *In re Bucyrus Grain Co.*, 56 B.R. 204 (Bankr.D.Kansas 1986), *rev'd*, 1988 WL 215410, 1988 U.S.Dist.Lexis 7324 (D.C.Kansas 1988) (trustee's action to collect an account receivable is a core proceeding); *In re L.A. Clarke & Son, Inc.*, 51 B.R. 31 (Bankr.D.Dist.Col.1985) (adversary proceeding concerned the administration of the estate); *In re Franklin Computer Corp.*, 50 B.R. 620 (Bankr.E.D.Pa.1985) (disputes on accounts receivable are core matters within the meaning of Sections 157(b)(2)(A), (E) and (O)); *In re Baldwin–United Corp.*, 48 B.R. 49 (Bankr.S.D.Ohio 1985) (debtors action constitutes core proceeding under Section 157(b)(2)(E)); *In re Lion Capital Group*, 46 B.R. 850 (Bankr.S. D.N.Y.1985) (Congress must have intended adversary proceedings to collect capital contributions from limited partners to be treated as core-proceedings).

■ As our Court of Appeals stated in *In re Manville Forest Products Corporation*, 896 F.2d 1384 (2d Cir.1990), the relevant inquiry in determining whether a proceeding is a core proceeding "is whether the nature of th[e] adversary proceeding, rather than the state or federal basis for the claim, falls within the core of federal bankruptcy power." *Id.*, at 1389. While the Court in *Manville* mischaracterized an objection to claim as an adversary proceeding, the decision reflects the Second Circuit narrow reading of *Marathon* and broad interpretation of Section 157(b)(2).

Unlike the defendant in *Manville*, the defendant in this case did not file a proof of claim so as to submit itself to the jurisdiction of the Bankruptcy Court. Nonetheless, the adversary proceeding at issue in the instant case concerns the administration and liquidation of an asset of the Debtor's estate, namely an account receivable, which clearly falls within the plain meaning of § 157(b)(2)(A) and (O). In particular, it involves a claim for $101,098.99 allegedly owed to the Debtor which if collected would inure to the benefit of the estate or the creditors of the estate. Accordingly, the prompt resolution of this adversary proceeding is essential to the administra-

tion of the estate and the adjustment of the debtor-creditor relationships since these funds are inextricably linked to the liquidation of the estate.

This conclusion is consistent with the decision of the Bankruptcy Court for the Eastern District of Pennsylvania in *In re Franklin Computer Corporation,* 60 B.R. 795 (Bankr.E.D.Pa.1986). In *Franklin Computer,* the court held that actions to collect on disputed accounts receivable are core proceedings within the meaning of Section 157(b). The Court reasoned that:

> When the debtor has been in business a substantial portion of its assets are in the form of accounts receivable. The prompt collection of these assets is often essential to the administration of the bankruptcy or reorganization process since the funds represented by the accounts are typically needed to meet the estates expense in advancing the administration of the case.... [Section] 157(b)(2)(A) provides that core proceedings include, but are not limited to 'matters concerning the administration of the estate.' Since the rapid resolution of this type of litigation is often essential to the sound administration of the estate, § 157(b)(2)(A) weighs in favor of finding that questions on accounts receivable are core matter.

*Id.* at 802. Thus, the Court found that the collection of accounts receivable are "matters concerning the administration of the estate" within the meaning of 28 U.S.C. § 157(b)(2)(A).

A similar conclusion was reached by the United States Bankruptcy Court for the Northern District of Ohio in *In re National Equipment & Mold Corp.,* 60 B.R. 133 (Bankr.N.D.Ohio 1986). While recognizing that an action to collect on an account receivable is an action which sounds in contract and arises under state law, the Court concluded that the resolution of this contractual dispute for goods and services rendered "will have a dispositive affect on the adjustment of the debtor-creditor relationship" under Section 157(b)(2)(O).

Moreover, in *In re Ben Cooper, Inc.,* 896 F.2d 1394 (2d Cir.1990), our Court of Appeals specifically declined to hold that a state law contract claim is "related to" the bankruptcy action under Section 157(c)(1), rather than a core proceeding under Section 157(b)(2), merely because it falls within the catch-all provisions of Section 157(b)(2), namely Sections 157(b)(2)(A) and (O). *Id.* at 1400 (declining to follow *In re Castlerock Properties,* 781 F.2d 159 (9th Cir. 1986)). The Court concluded that "[s]uch a reading of the statute in our view would render the general provisions null." *Id.*

Accordingly, this Court concludes that the Trustee's action to collect an account receivable is a core proceeding within the meaning of Sections 157(b)(2)(A) and (O).

■ This Court is also convinced that the adversary proceeding at issue in the instant case is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(E) since it involves the "turn over of property of the estate." Section 542(b), entitled "Turnover of property to the estate," provides, in pertinent part, that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to or on the order of the trustee ..." The inclusion of the words "to turn over property of the estate" in Section 157(b)(2)(E) evinces Congress's intention to include all proceedings that might be brought pursuant to Section 542 as core proceedings under § 157(b)(2)(E). *See In re Baldwin–United Corporation,* 48 B.R. 49 (Bankr.S.D.Ohio 1985).

To the extent that the Trustee is seeking to collect monies allegedly due from U.W. Marx for work, labor and services rendered and billed, in the nature of an account stated, the instant adversary proceeding is a core proceeding pursuant to Section 157(b)(2)(E) which is matured, payable on demand or order and for a sum certain under Section 542. *See In re Lion Capital Group,* 46 B.R. 850 (Bankr.S.D.N.Y.1985). The fact that U.W. Marx asserts a set-off or recoupment does not change the fact that the debt is matured and subject to a core proceeding. *In re Allegheny, Inc.,* 68 B.R. 183 (Bankr.W.D.Pa.1986).

■ This Court declines to follow the reasoning of some courts that Section 542(b), and in turn Section 157(b)(2)(E), only apply to *undisputed* liquidated debts. *See e.g., Acolyte Electric Corp. v. New York,* 69 B.R. 155 (Bankr.E.D.N.Y.1986), *aff'd,* No. 86–0329, 1987 WL 47763 (E.D.N.Y. March 27, 1987) (to the extent that bona-fide dispute exists with regard to an identifiable fund or res, a proceeding to recover the res is not a turnover). The use of the words "to turn over the property of the estate" in Section 157(b)(2)(E) mirrors the language in Section 542 and manifests an intent on the part of Congress to include all proceedings that may be brought as turnover proceedings pursuant to Section 542 as core proceedings under Section 157(b)(2)(E). Since Section 542 specifically provides defendants with grounds upon which to defend, it cannot be said that Section 542 or Section 157(b)(2)(E) only apply to undisputed liquidated debts.

As a practical matter, this Court is not impressed with U.W. Marx's counterclaim for set-off or recoupment since U.W. Marx's was neither eager to file a proof of claim against the debtor's estate, nor was it concerned with the financial perils associated with its failure to do so.[2] Congress could have never intended Section 157(b) of the Bankruptcy Act of 1984 to provide a means by which a trade account debtor could frustrate the Trustee's effort to marshall the assets of a debtor's estate by deliberately failing to file a proof of claim and then raising a dilatory counterclaim or set-off solely for the purpose of depriving the bankruptcy court of its authority to render a final judgment. If permitted, any customer could defy the Trustee, and remit the case to the slower and more costly proceedings of a state court. Congress, in fact, enacted Section 157(b) in response to the Supreme Court's decision in *Marathon* and because it intended to give bankruptcy judges all the authority that is constitutionally permissible to adjudicate claims affecting the estate.

■ Moreover, if this Court were to adopt the view that Section 157(b)(2)(E) only pertains to *undisputed* liquidated debts, a defendant could transform a core proceeding into a non-core proceeding merely by artfully drafting his/her responsive pleading to include an affirmative defense or counterclaim and thereby deprive the bankruptcy court of its jurisdictional authority. The preferred practice would be to determine whether subject matter jurisdiction exists based on the averments in the complaint and then address the merits of the case. *See Burks v. Lasker,* 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979) ("the question whether a claim exists is not a question of jurisdiction and therefore may be assumed without being decided."). *See also Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946) ("Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy." *Id.* at 682, 66 S.Ct. at 776.).

For the reasons noted above, this Court concludes that the adversary proceeding between the Trustee and U.W. Marx is a core proceeding within the meaning of § 157(b), so that it may be adjudicated before a bankruptcy judge.

■ Having determined that the Trustee's complaint presents a "core proceeding," the Court further concludes that the defendant is entitled to a jury trial in the bankruptcy court, if timely application has been made. *In re Ben Cooper,* 896 F.2d at 1402–1403.

This Court in *In re Cohen,* 107 B.R. 453 (S.D.N.Y.1989) held that 28 U.S.C. § 157 "contemplates that if a jury trial is required in core proceedings affecting the Debtor, it can be conducted in the Bankruptcy Court." *Id.* at 455. In *Cohen,* a blind man sued a restaurant owner for discrimination under Sections 296(2)(a) and 296(14) of the New York Executive Law seeking to recover damages. The Court

---

**2.** Such failure to file a proof of claim will result in discharge of the Debtor. *See* 11 U.S.C. §§ 524, 727; Bankruptcy Rule 3002(a). *See also*

*In re Graziano,* 35 B.R. 589 (Bankr.E.D.N.Y. 1983) (failure to file proof of claim will preclude recovery against the debtor's estate).

determined that the "Bankruptcy Court may and should conduct the jury trial because judicial efficiency and fairness to both parties will be served if the entire controversy, as to liability, damages and dischargeability, is adjudicated by one judicial officer in one proceeding." *Id.*

■ Finally, the defendant seeks to have the venue of this action transferred from the Southern District of New York to the Northern District of New York pursuant to 28 U.S.C. § 1412. Defendant contends that the venue chosen by plaintiff is inconvenient because some of the witnesses it intends to call at trial are located in or near Albany County.

U.W. Marx, however, has not overcome the strong presumption in favor of maintaining venue where the bankruptcy proceeding is pending, nor has defendant satisfied its burden of proving that a transfer of venue is appropriate. *See In re Lionel Corporation*, 24 B.R. 141 (Bankr.S.D.N.Y. 1982); *In re Pavilion Place Associates*, 88 B.R. 32 (Bankr.S.D.N.Y.1988). In reaching this conclusion, the Court notes that the construction contract was performed within the boundaries of the Southern District; that the Debtor's principal place of business was located within the Southern District of New York; that many of the witnesses are located in the Southern District; and that this case is only one of several adversary proceedings which have been or will be commenced by the Trustee.

Thus, this Court finds that it would be judicially inefficient, financially burdensome and inconvenient to transfer venue in this case. Defendant's motion to transfer venue to the Northern District of New York is denied.

Accordingly, Defendant's motion is denied in all respects, and the case referred to the Honorable Prudence B. Abram, United States Bankruptcy Judge for proceedings consistent with this decision.

So Ordered.