**WEINER'S, INC. and Wisenberg Insurance and Risk Management, Appellants,**

v.

**T.G. & Y. STORES CO., Appellee.**

No. 94 Civ. 1656 (KMW).

United States District Court,
S.D. New York.

Jan. 24, 1996.

Ira S. Sacks, Beth E. Levine, Fried, Frank, Harris, Shriver & Jacobson, New York City, for T.G. & Y. Stores Co.

Trey A. Monsour, Verner, Liipfert, Bernhard, McPherson and Hand, Houston, TX, for Weiner's Inc. and Wisenberg Insurance and Risk Management.

## OPINION AND ORDER

KIMBA M. WOOD, District Judge.

This bankruptcy appeal raises the question whether a bankruptcy court may conduct a jury trial to adjudicate a post-petition state law tort claim brought by a Chapter 11 debtor against a non-creditor. I hold that it may not, for the reasons given below.

### I. *Background*

On February 26, 1992, T.G. & Y. Stores Co. ("TG & Y") filed a voluntary Chapter 11 petition. On November 22, 1992, in Texas, a fire that started in a store owned by Weiner's Inc. ("Weiner's") spread to, and damaged, a store owned by TG & Y. On October 26, 1994, TG & Y filed a complaint seeking a jury trial in bankruptcy court to adjudicate its state law negligence claims against Weiner's and its insurance company, Wisenberg Insurance and Risk Management ("Wisenberg").

The bankruptcy court accepted jurisdiction over the state law tort action, on the ground that it was a "core proceeding" under 28 U.S.C. § 157(b)(2). Weiner's and Wisenberg (collectively, for convenience, "Weiner's") appeal the bankruptcy court's decision to accept jurisdiction to this court.

### II. *Analysis*

#### A. *Whether This Court Has Jurisdiction*

■ TG & Y contends that this court lacks jurisdiction over the appeal because the bankruptcy court's order is not "final," *see* 28 U.S.C. § 158, in that neither TG & Y's tort action nor the bankruptcy action as a whole has terminated. Moreover, TG & Y cites Second Circuit precedent suggesting, by analogy, that the order here is not an appealable collateral order, because it does not finally resolve a discrete dispute over substantive rights within the larger case. *In re Chateaugay Corp.*, 826 F.2d 1177, 1179–80

(2d Cir.1987) (order on motion to withdraw bankruptcy court reference not appealable as collateral order).

■ I accept jurisdiction over the appeal, however, on the ground that it is an appealable interlocutory bankruptcy order, under 28 U.S.C. § 158(a). An interlocutory order of a bankruptcy court is appealable where (1) it involves a controlling question of law as to which there is substantial ground for difference of opinion and (2) an immediate appeal would materially advance the ultimate termination of the litigation. *See, e.g., In re Johns–Manville Corp.*, 39 B.R. 998, 998–99 (S.D.N.Y.1984).

As I explain below, the question presented by this appeal is a difficult one, which I ultimately resolve in favor of the appellant. Moreover, my accepting this appeal will advance the ultimate termination of the litigation, because I reach the conclusion that the jury trial in the tort action cannot go forward in bankruptcy court. Because the locus of the alleged tort is Texas, Weiner's suggests—and TG & Y does not dispute—that, if the tort claims at issue cannot be heard by a Southern District bankruptcy court, they will be heard in a jury trial conducted by a Texas state court. Moreover, Weiner's suggests— and TG & Y does not dispute—that the Texas state court proceeding will allow easier access to the relevant evidence and witnesses, and therefore a more expeditious disposition of the case, than would the bankruptcy proceeding.

For these reasons, I accept jurisdiction over this appeal.

#### B. *Whether the Post-petition Tort Action Is A Core Proceeding*

■ A "core proceeding arising under title 11, or arising in a case under title 11" may be adjudicated in bankruptcy court, *see* 28 U.S.C. § 157(b)(2). Thus, to determine if the bankruptcy court's decision to accept jurisdiction was proper, I must ascertain whether TG & Y's state law tort claims are properly deemed "core" to its ongoing bankruptcy case.

### 1. *Whether the Tort Action Fits A Statutory Category*

■ The bankruptcy court held that TG & Y's state tort action is a core proceeding because it is a "turnover" proceeding to collect property held by the estate, under 11 U.S.C. § 542. *See* 28 U.S.C. § 157(b)(2)(E) (turnover proceeding is a core proceeding). The word "turnover," however, implies action far more ministerial than is required in these circumstances: TG & Y's action to determine the amount of a claimed debt to the estate that is, as yet, wholly disputed and unliquidated cannot properly be styled an action to "turn over" estate "property." *See, e.g., Acolyte Electric Corp. v. New York*, 69 B.R. 155, 170 (Bkrtcy.E.D.N.Y.1986) (action where bona fide dispute exists as to existence, magnitude, or identity of res to be turned over is not a turnover action); *In re Ven–Mar Intern., Inc.*, 166 B.R. 191, 192–93 (Bkrtcy. S.D.Fla.1994) (action to recover property, ownership of which is disputed, is not a turnover action).

The court notes that dictum in another Bankruptcy Court decision, *Leco Enterprises*, suggests that a disputed debt may properly form the basis of a turnover action. *In re Leco Enterprises*, 125 B.R. 385, 390–91 (S.D.N.Y.1991). *Leco's* reasoning on this point has been criticized by courts in this District and Circuit. *See In re CIS Corp.*, 172 B.R. 748, 760 (S.D.N.Y.1994) (action should be regarded as a turnover proceeding only when no legitimate dispute over what is owed to debtor exists) (citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1102 (2d Cir. 1993) (*Leco* approach, followed to its limit, would unconstitutionally undermine core/noncore distinction), *cert. dismissed*, —— U.S. ——, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994)). Moreover, the debt at issue in *Leco* was only partially disputed; it was a matured debt for a sum certain that was potentially subject to a set-off. *Id.* Unlike the debt in *Leco*, the debt here is wholly disputed, because the parties dispute whether Weiner's negligence was the cause of the fire damage that TG & Y suffered. For this reason, *Leco's* rationale for holding that an action to collect a disputed debt is a turnover action is not strongly implicated here. *Leco* reasoned that, if actions to collect partially disputed debts could not be brought in bankruptcy court, then parties would have an incentive to assert meritless set-offs to the debts they owed. *See Leco*, 125 B.R. at 391. Such meritless set-offs could delay collection, because a state court contract action would likely take longer than a bankruptcy proceeding to prove up an estate-related debt. *Id.*

This perverse incentive is absent here. There is no reason why a bankruptcy court should generally be able to administer a state tort law jury trial faster or more efficiently than could a district court or state court experienced in trying such cases. Indeed, as I have suggested above, here the state court action is likely to be more expeditious than an action in bankruptcy court, due to the greater proximity of evidence and witnesses.

For these reasons, I find that this tort action cannot be fairly characterized as a "turnover proceeding" under the statute.

■ Nor can this tort action properly be characterized, as TG & Y argues, as a "matter[ ] concerning the administration of the estate," 28 U.S.C. § 157(b)(2)(A). TG & Y contends that the action fits this statutory category because, unless the bankruptcy court adjudicates the tort action, the administration of the estate will be impeded, because the store property damaged in the fire is a key asset of TG & Y. However, a tort litigation is not transformed into an estate administration matter simply because it may ultimately bring funds into the estate, and thereby allow the renovation of damaged estate property. *See Acolyte*, 69 B.R. at 172, 175 (action is not a turnover action merely because it brings funds into the estate).

### 2. *Whether the Tort Action Is Otherwise Core*

As the previous section explained, TG & Y's state law tort action fits none of the explicit statutory examples of core proceedings. As a consequence, the action may count as a core proceeding only if it otherwise bears a close nexus to the ongoing Chapter 11 case. *See* 28 U.S.C. § 157(b)(2) (statutory list of core proceedings is not exhaustive); § 157(b)(2)(O) (catchall provision

stipulating that "other proceedings affecting the liquidation of the assets of the estate" may constitute core proceedings).

Courts in this District that have made a "nexus" inquiry have often applied two important factors, inquiring (1) whether the proceeding invokes substantive rights provided by Title 11, and (2) whether by its nature the proceeding could arise in only the context of a bankruptcy case. *See, e.g., In re Brooks Fashion Stores, Inc.,* 124 B.R. 436 (Bkrtcy. S.D.N.Y.1991). Neither of the two "nexus" factors applies here: (1) the state law tort claims TG & Y asserts are not created by Title 11 or by any other Act of Congress, and (2) these claims could easily have arisen outside bankruptcy.

This would end my inquiry, except that this two factor test provides only one possible interpretation of the bankruptcy jurisdiction statute, and of the Supreme Court's decision in *Northern Pipeline Const. v. Marathon Pipe Line Co.,* 458 U.S. 50, 83, 102 S.Ct. 2858, 2877–78, 73 L.Ed.2d 598 (1982). *Marathon* held that, incident to Congress's power to create rights, Congress also has the power to vest jurisdiction over the adjudication of those rights in an Article I court, such as a bankruptcy court, rather than in an Article III court. *Id.* at 84, 102 S.Ct. at 2878. The Southern District's two part test, then, provides one way of determining whether rights are Congressionally created, and hence may be vested in an Article I court.

The Second Circuit has suggested, however, that "nexus" inquiry under the bankruptcy jurisdiction statute, and under *Marathon,* is more flexible than the two-factor test alone would indicate. *In re Manville Forest Products,* 896 F.2d 1384, 1388–90 (2d Cir.1990); *In re Best Products Co., Inc.,* 68 F.3d 26, 31–33 (2d Cir.1995). According to the Second Circuit, the "relevant inquiry is whether the nature of [the] proceeding, rather than the state or federal basis for the claim, falls within the core of federal bankruptcy power." *In re Manville Forest Products,* 896 F.2d at 1389.

Under the Second Circuit's test, even wholly state-law based claims may fall within bankruptcy jurisdiction if there is some other reason to think that, by their nature, they fall within the core of the bankruptcy court's power. For example, a bankruptcy court has core jurisdiction over tort claims against the debtor's appointed trustees. *In re Harbor Park Assocs. Ltd. Partnership,* 112 B.R. 555 (S.D.N.Y.1990); *In re G. Weeks Securities, Inc.,* 89 B.R. 697, 707 (Bkrtcy.W.D.Tenn. 1988). This is proper: although Title 11 does not create the claims themselves, it does create the office and duties of a bankruptcy trustee. In addition, a bankruptcy court may accept jurisdiction over post-petition contract actions, even though contract claims are state law claims. *See, e.g., In re Ben Cooper, Inc.,* 896 F.2d 1394, 1399–1400 (2d Cir.1990), *vacated on other grounds by Insurance Co. of State of Pennsylvania v. Ben Cooper, Inc.,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated by In re Ben Cooper, Inc.,* 924 F.2d 36 (2d Cir.1991), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991). Chapter 11, rather than liquidating the debtor's assets, creates a debtor-in-possession that must run its affairs, and at times enter into contracts. Thus, post-petition contracts are integral to the administration of the estate, and core to the bankruptcy power. *Id.* at 1399. Moreover, an entity contracting with the debtor post-petition is on notice that it has potentially submitted itself to the bankruptcy court's jurisdiction.

To summarize, then, in a case involving a post-petition tort claim against the trustee, the statutorily-created office and duties of the trustee provide a bankruptcy nexus. In a case involving a post-petition contract claim, the contracting party's consent to deal with the bankrupt debtor provides a bankruptcy nexus.

On the other hand, under *Marathon,* in a case involving a pre-petition contract claim, no bankruptcy nexus exists, due to the lack of notice to the contracting party of the impending bankruptcy. *See Ben Cooper,* 896 F.2d at 1400 (citing relevant cases). Similarly, no bankruptcy nexus exists in a case involving a tort claim arising pre-petition. *See, e.g., In re Yobe,* 75 B.R. 873 (Bkrtcy. W.D.Pa.1987) (claim of tortious interference alleged to have caused bankruptcy held to be

**34**

non-core); *In re Bokum Resources Corp.*, 49 B.R. 854 (Bkrtcy.D.N.M.1985) (contract-related tortious interference claim held to be non-core).

In my view, TG & Y's post-petition tort claim, against a non-creditor third party, is more like a non-core, pre-petition contract or tort claim than it is like a core, post-petition contract claim. Like the pre-petition contract partner or tortfeasor, the post-petition tortfeasor cannot generally be held to have notice of the debtor's bankruptcy, and of the risk that it will be haled into bankruptcy court.

Granted, one court, in a Chapter 7 case, has found that the mere fact that a tort claim arises from post-petition conduct can support a holding that the claim is a core proceeding in bankruptcy. *Matter of O'Sullivan's Fuel Oil Co.*, 88 B.R. 17, 20 (D.Conn.1988). However, I am unpersuaded that the fact that a claim arises post-petition can, without more, transform the claim into a core proceeding. *See In re CIS Corporation*, 172 B.R. at 758 (conversion action is non-core even if asserted post-petition); *cf. also In re Lipstein*, 94 Civ. 7100 (LLS), 1995 WL 675486, at *1 (S.D.N.Y. Nov. 14, 1995), (holding that tort claims that "could have been brought outside the bankruptcy environment" are non-core, without discussing whether claims were brought pre- or post-petition).

C. *Whether the Bankruptcy Court May Conduct A Jury Trial In a Non–Core, Related Proceeding*

 Having found that this proceeding is non-core, I need not go on to decide whether it is "related" to the bankruptcy case, under 28 U.S.C. § 157(c)(1). Even if this non-core proceeding were properly deemed related, it could not go forward in the bankruptcy court, because it requires a jury trial. *See In re Orion Pictures Corp.* 4 F.3d at 1101 (2d Cir.1993). As the Second Circuit held in *Orion Pictures*, allowing a bankruptcy court to hold a jury trial in related, non-core proceedings, which are subject to *de novo* review of district court under 28 U.S.C. § 157(c)(1), would violate the Seventh Amendment's Reexamination Clause, under which "no fact tried by a jury, shall be otherwise reexam-

ined in any Court of the United States." *Id.* (citing U.S. Const., amend. VII); *see also Lipstein*, 1995 WL 675486, at *1 (bankruptcy court cannot constitutionally hold jury trial in non-core matter).

D. *Conclusion*

For the reasons set out above, I hereby vacate the bankruptcy court's order accepting jurisdiction, without prejudice to TG & Y's right to refile its action in the proper, non-bankruptcy court.

SO ORDERED.