# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 11-6036

_____

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Alvin James Falzerano, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| John S. Lovald, Trustee, | * | |
| | * | |
| Plaintiff – Appellant, | * | Appeal from the United States |
| | * | Bankruptcy Court for the District of |
| v. | * | South Dakota |
| | * | |
| Alvin James Falzerano; Gerald Wayne | * | |
| Falzerano; Lorelie Lynn Barth; Douglas | * | |
| Dean Falzerano; Warren Craig | * | |
| Falzerano; Laura L. Fox; Vanessa | * | |
| Michelle Falzerano; The Falzerano | * | |
| Children's Trust, by and through its | * | |
| Trustees, Warren Falzerano, Vanessa | * | |
| Falzerano, and Douglas Falzerano; and | * | |
| Theresa Ann Falzerano Estate, by and | * | |
| through its Personal Representative | * | |
| Douglas Dean Falzerano, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: July 28, 2011
Filed: August 10, 2011

_____

Before KRESSEL, Chief Judge, SCHERMER, and VENTERS, Bankruptcy Judges.

_____

VENTERS, Bankruptcy Judge.

The Chapter 7 Trustee, John S. Lovald, appeals the bankruptcy court's entry of a judgment in favor of the Defendants on his complaint seeking turnover under 11 U.S.C. § 542 of money allegedly owed to the bankruptcy estate. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(b). For the reasons set forth below, we affirm the judgment of the bankruptcy court.[1]

## STANDARD OF REVIEW

Findings of fact are reviewed for clear error, and legal conclusions are reviewed de novo.[2]

## BACKGROUND

The Debtor, Alvin James Falzerano, and Theresa Ann Falzerano were husband and wife. In May 2001, the Debtor arranged to purchase 500 tons of hay from Orand Liebelt. Theresa gave Liebelt a $1,000 down payment for the purchase.

Just before the hay was delivered, Theresa died on December 4, 2001. In her will, she left the Debtor a life estate in 320 acres of real estate (the "Ranch"), and she left her children, Defendants Douglas Dean Falzerano, Laura L. Fox, Gerald Wayne Falzerano, and Warren Craig Falzerano, and her grandchild, Vanessa Michelle Falzerano (collectively, "heirs"), her cattle and all her other property, including a remainder interest in the Ranch.

---

[1] The Honorable Charles L. Nail, Jr., United States Bankruptcy Court for the District of South Dakota.

[2] *See In re Waterman*, 248 B.R. 567, 570 (B.A.P. 8th Cir. 2000).

Lorelie Lynn Barth ("Lorelie"), Theresa's daughter and the mother of Vanessa Falzerano, was intentionally omitted from Theresa's will. To avoid a threatened will contest, the Debtor, the heirs, and Lorelie entered into a family settlement agreement under which the probate estate's personal representative was permitted to "distribute such items of [Theresa's] personal property as she deem[ed] necessary or advisable" to the heirs, and the Debtor was permitted to keep and use Theresa's remaining personal property until he no longer needed or wished to do so, at which time it would be distributed to the heirs. The Debtor was also permitted to "run [Theresa's] cattle herd and raise the cattle for the heirs" and "use the profits from the land and cattle for his own living expenses." As of the date of the trial, no distributions – of cattle or money – had been made to the heirs pursuant to the will or the settlement agreement.[3]

In addition to managing the probate estate's cattle, the Debtor had an arrangement with Gladys Bonefield to pasture approximately 70 head of her cattle in return for a share of her calf crop. He also had an arrangement with Dennis Wentzel to pasture approximately 80 head of Wentzel's cattle in return for a share of his calf crop. The Debtor kept all of the cattle on the Ranch for the winter (six months). In the summer, he moved the cattle to various other locations: the probate estate's cattle went to a neighbor's land, Bonefield's cattle went to "the Indian reservation," and Wentzel's cattle were returned to Wentzel.

The hay ordered from Liebelt was delivered to the Ranch in December 2001 and January 2002 and was fed to all of the cattle under the Debtor's management in 2002 and 2003. However, the Debtor refused to pay Liebelt for the hay. He testified that it was "very poor" and that he fed it to the cattle only "because hay was hard to find then or otherwise [he] wouldn't have used it at all."

---

[3] Initially, the probate estate had 107 head of cattle. However, by the time of trial, the Debtor had sold all but approximately 30 head.

3

Liebelt sued Debtor in state court, and on September 6, 2007, the state court entered a judgment against the Debtor for $10,000, plus interest and costs. Before the judgment was satisfied, voluntarily or otherwise, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on November 16, 2007. John S. Lovald was appointed as the trustee of the Debtor's bankruptcy estate. On November 12, 2009, he filed a complaint under 11 U.S.C. § 542 against the Defendants to recover rent for the pasture and the value of the hay provided to the probate estate's cattle. The Trustee argued in his complaint that the Defendants were liable to the bankruptcy estate under an unjust enrichment theory.

After conducting a trial on the matter, the bankruptcy court entered judgment in favor of the Defendants. The bankruptcy court held, *inter alia*, that the Defendants were not unjustly enriched because the Debtor was appropriately compensated for pasturing and feeding the estate's cattle because the family settlement agreement under which the parties were operating provided that the Debtor was entitled only to the "net" profits from the estate's cattle, which would necessarily reflect the cost of feeding and maintaining the cattle.[4]

## DISCUSSION

We can affirm on any basis supported by the record.[5] The bankruptcy court entered judgment in favor of the Defendants on the grounds that the Trustee failed to establish all of the elements of a claim for unjust enrichment. Specifically, the court found that, although the probate estate and the heirs benefitted from having the hay

---

[4] Douglas Falzerano, Warren Falzerano, Laura Fox, Lorelie Barth, Vanessa Falzerano, and the Theresa Ann Falzerano Estate, by its Personal Representative, Laura Fox, filed a counterclaim against the Trustee seeking to recover any amount that might be awarded to the Trustee on his complaint. The bankruptcy court dismissed the counterclaim after denying the Trustee relief on his complaint. That ruling was not appealed.

[5] *See Phipps v. FDIC*, 417 F.3d 1006, 1010 (8th Cir. 2005).

fed to the cattle, under the family settlement agreement the Debtor was entitled to receive the net profit from the probate estate's cattle and the cost of the hay would have been factored into the determination of the net profits. The same was true for the use of the Ranch's pastures. Therefore, since the Debtor had retained all of the net profits from the cattle, the bankruptcy court concluded that the probate estate and the heirs had effectively compensated the Debtor for the hay and the use of the pasture.

While we find no clear error in the bankruptcy court's determination that the Defendants were not unjustly enriched, and therefore not indebted to the bankruptcy estate,[6] we affirm on the more fundamental ground that the relief sought by the Trustee was beyond the scope of 11 U.S.C. § 542.

Our analysis "begin[s] where all such inquiries begin: with the language of the statute itself."[7] Section 542 provides in pertinent part:

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of

---

[6] There is ample evidence in the record to support this finding. Ironically, if the Debtor had been permitted to recover for the hay provided to the estate's cattle, he would have been the one unjustly enriched. Theresa paid only $1,000 (of presumably $11,000 due) for the hay, and the Debtor benefitted by feeding it to Bonefield's and Wentzel's cattle (in addition to the probate estate's cattle), from which he received a share of the calves born. It is also ironic that the estate is seeking payment for hay the Debtor refused to pay for because he believed it was of extremely poor quality.

[7] *United States v. Ron Pair Enter. Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

5

such property, unless such property is of inconsequential value or benefit to the estate.

(b) Except as provided in subsection (c) or (d) of this section, *an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee,* except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.[8]

The Trustee contends that the debt allegedly owed by Defendants is property of the estate under § 541(a)(1) and is subject to turnover under § 542(a)(2).  Under the plain language of the statute, however, actions to collect a debt owed to an estate are governed by § 542(b), not § 542(a).[9]  And § 542(b) applies only to debts that are "matured, payable on demand, or payable on order."  An action to collect a disputed debt based on unjust enrichment is not any of these.[10]

---

[8] 11 U.S.C. § 542 (West 2011) (emphasis added).

[9] 11 U.S.C. § 542.

[10] 11 U.S.C. § 542(b) (West 2011); *In re Cassidy Land and Cattle Co., Inc.*, 836 F.2d 1130, 1132-339 (8th Cir. 1988) (holding that trustee could pursue action to foreclose on a mortgage and collect on promissory note under § 542(b) where contract debtor had defaulted and the debt had "matured").  *See also*, *In re Charter Co.*, 913 F.2d 1575, 1579 (11th Cir.1990) ("Turnover proceedings are not to be used to liquidate disputed contract claims.");  *In re Asousa P'ship.*, 264 B.R. 376, 384 (Bankr. E.D. Pa. 2001) ("[Turnover under § 542] cannot be used to determine the rights of parties in legitimate contract disputes.");  *Weiner's, Inc. v. T.G. & Y. Stores Co.*, 191 B .R. 30, 32 (S.D. N.Y. 1996) ("[An] action to determine the amount of a claimed debt to the estate that is, as yet, wholly disputed and unliquidated cannot properly be styled an action to 'turn over' estate 'property.' ").

Under South Dakota law,[11] a claim for unjust enrichment is an action in equity implying the existence of a contract "when a party confers a benefit upon another party who accepts or acquiesces in that benefit and it is inequitable to receive that benefit without paying."[12]  Such a debt defies characterization as "matured, payable on demand, or payable on order."  Thus, the Trustee's action exceeded the scope of § 542 and the bankruptcy court was correct in entering judgment in favor of the Defendants.

In his reply brief, the Trustee points to *In re NWFX, Inc.*,[13] as precedent for pursuing an unjust enrichment claim under § 542(a).  The Court of Appeals' holding in *NWFX*, though, undermines rather than supports the Trustee's case.

In *NWFX*, the Chapter 11 trustee of Northwest Financial Express (NWFX), a business previously engaged in the marketing of money orders to grocery stores, sought turnover of the value of all of the money orders that a grocery store chain, Rice Food Markets, Inc., had sold to third parties but for which it had not remitted the proceeds (minus a commission) to NWFX.  Rice argued that there was no contract between the parties governing their rights in the money order proceeds and refused to turn them over because it was concerned that its customers would hold it liable for the now-valueless money orders they had purchased.  As of the trial on the matter, Rice had already used some of the proceeds to reimburse affected customers.

---

[11] *In re Wade*, 219 B.R. 815, 821 (B.A.P. 8th Cir. 1998) ("It is fundamental that state law controls the underlying rights parties may have to property, contracts, and the like.").

[12] *Miller v. Jacobsen*, 714 N.W.2d 69, 81 (S.D. 2006) (quoting *Sporleder v. Van Liere*, 569 N.W.2d 8, 12 (S.D. 1997)).

[13] 864 F.2d 588 (8th Cir. 1988).

The bankruptcy court and district court denied the trustee's demand for turnover, finding that there was no contract between the parties and, therefore, the estate had no interest in the proceeds received by Rice.[14] The Eighth Circuit Court of Appeals agreed that the estate had no contractual right to the proceeds, but it held that Rice had been unjustly enriched by retaining the proceeds, and therefore, the Trustee had an equitable interest in the proceeds in Rice's possession, which had to be turned over pursuant to § 542(a).[15]

Notably, the Court of Appeals did not recognize unjust enrichment as a basis for collecting a debt under § 542(a), as the Trustee seeks to do here; rather, it viewed unjust enrichment as the basis for the estate's interest in certain property, *i.e.*, the money order proceeds in Rice's possession.

> Despite the absence of a legally valid agreement, however, there is an equitable interest equal to the reasonable value of the excess benefits Rice has received from its dealings with Northwest. These equitable interests constitute property of the estate. 11 U.S.C. § 541(a)(1). *As NWFX property in Rice's possession,* it is subject to turnover under 11 U.S.C. § 542(a).[16]

This reading of *In re NWFX* comports with the language used by the Court of Appeals and the structure of §§ 542(a) and (b), which separately address turnover of property of the estate, on one hand, and the collection of debts owed to an estate, on the other.

Moreover, the limitation in *In re NWFX* on the trustee's right of turnover to the proceeds in Rice's possession comports with the Court of Appeals' more recent ruling

---

[14] *Id*. at 589-90.

[15] *In re NWFX, Inc.*, 864 F.2d at 591-92.

[16] *Id*. at 592 (emphasis added).

in *In re Pyatt*,[17] wherein it stated unequivocally that § 542(a) permits a trustee "to compel turnover only from entities *which have control of property of the estate or its proceeds at the time of the turnover demand.*"[18] At the time of the Trustee's demand in this case, the Defendants did not have (and, apparently, have never had)[19] possession of any proceeds from the estate's cattle, and the Trustee's claim can be construed as nothing other than a demand on an alleged debt.

## CONCLUSION

For the reasons stated above, the judgment of the bankruptcy court denying the relief sought in the Trustee's complaint for turnover is hereby affirmed.

---

[17] 486 F.3d 423 (8th Cir. 2007).

[18] *Id*. at 528 (emphasis added).

[19] The record indicates that the proceeds from the sale of the probate estate's cattle were paid to a bank holding a security interest in the cattle. It is unclear, however, whether any of the Defendants had momentary control over those proceeds.