The GSI GROUP, INC., Plaintiff,

v.

## ZIM INTEGRATED SHIPPING SERVICES, LTD., Defendant.

### No. 06 CIV. 1707(VM).

United States District Court,
S.D. New York.

June 9, 2008.

John Randolph Foster, Waesche, Sheinbaum and O'Regan, P.C., New York, NY, for Plaintiff.

Vincent M. Deorchis, Deorchis, Wiener & Partners, LLP, New York, NY, for Defendant.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff the GSI Group, Inc. ("GSI") brought this action against Zim Integrated Shipping Services, Ltd. ("Zim") asserting that Zim negligently prepared shipping documents and failed to ship containers in four shipments as instructed, resulting in approximately $284,000 of additional storage charges GSI had to pay at the port of discharge. Zim moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). For the reasons stated below, Zim's motion is GRANTED in part and DENIED in part.

## I. BACKGROUND [1]

In 2004, GSI, one of the leading manufacturers of agricultural equipment in the United States, agreed to provide a project in Russia with a large quantity of pig-related farming equipment (the "Equipment"). GSI sold the Equipment to Martinico ("Martinico"), a Dutch company, and Martinico in turn sold the Equipment to Agrofirm Zolotaya Niva ("Agrofirm") in Russia. The named end user of the Equipment was Gvardia ("Gvardia"), whose relationship to Agrofirm or Martinico is unclear. GSI contracted with Zim, a carrier, for the transportation of the Equipment in fifty-eight containers (the "Containers")to Novorossiysk, Russia, the port of discharge (the "Discharge Port"). Of the Containers, Zim shipped fifty-four

---

1. The factual summary that follows derives primarily from the Complaint, dated March 3, 2006; GSI's Letter Memorandum, dated April 18, 2008; Zim's Answer, dated May 15, 2006; Zim's Letter Memorandum, dated April 18, 2008 ("Def.'s Mem."); and the Oral Argument Transcript, dated April 25, 2008. Except where specifically referenced, no further citation to these sources will be made.

out of the Port of New York, with the four remaining containers shipped out of Haifa, Israel. At the Discharge Port, Gvardia had only a single customs entry permit for the Containers, meaning that none of the individual Containers could clear Russian customs until after all of the Containers arrived at the Discharge Port.

GSI asserts that, through Apollo Forwarding ("Apollo")—its freight forwarder—it instructed Zim to transport the Containers from New York in four discrete shipments over an approximate three-week period (the "Shipping Instructions"). Zim, however, transported the Containers in fifteen different shipments between January 26 and March 12, 2005, and as a result, the Containers required additional storage at the Discharge Port until the arrival of the final container, and GSI thus incurred additional terminal storage expenses known as "demurrage."

GSI also asserts that after the Containers arrived at the Discharge Port, additional delays occurred because Zim negligently prepared and mishandled shipping documents required for clearing Russian customs (the "Cargo Documentation"), such as the bills of lading. Specifically, GSI asserts that Zim, by failing to keep certain Containers together, exacerbated the delays because the master bills of lading needed to be updated accordingly before the Equipment could be released. In addition, GSI asserts that the Zim representative office in Russia was, for reasons unknown, altering customs documentation (e.g., changing container weights and numbers), causing additional delays.

GSI concludes that because of Zim's negligence in failing to adhere to the Shipping Instructions and negligently preparing and mishandling the Cargo Documentation, GSI incurred approximately $284,000 of additional demurrage charges (the "Demurrage Charges") that it would not have had to pay absent Zim's negligence.

## II. DISCUSSION

### A. LEGAL STANDARD

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986). The moving party bears the burden of proving that no genuine issue of material fact exists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir.1994).

### A. LIABILITY FOR DELAY OR CONSEQUENTIAL DAMAGES

#### 1. Bill of Lading

■ Bills of lading are contracts between shippers and carriers that expressly set forth the carrier's obligations for delivering specific goods. *See International Knitwear Co. v. M/V Zim Canada*, No. 92 Civ. 7508, 1994 WL 924203, at *3 (S.D.N.Y. Oct.6, 1994). "[B]ills of lading are contracts of adhesion and, as such, are strictly construed against the carrier." *Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476, 482 (2d Cir.1985).

■ The proper interpretation of a bill of lading is a question of law, which requires courts to apply the general standards applicable to contract disputes. *See Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 420–22 (6th Cir.2008); *International Knitwear*, 1994 WL 924203, at \*3. In contract disputes, courts may grant motions for summary judgment "only where the agreement's language is unambiguous and conveys a definite meaning." *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 461 (2d Cir.1994). "Contractual language is unambiguous when it has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion," *Id.* (citations and quotation marks omitted) (brackets in original). Contractual language is ambiguous when it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Walk–In Med. Ctrs., Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir.1987). Determining whether a contract's language contains ambiguities is a threshold question of law for courts and should be made with reference to the contract alone. *See International Knitwear*, 1994 WL 924203, at \*3.

■ In reviewing parties' competing interpretations of a contract's language, courts "need not determine which is the more likely interpretation," but rather the courts "merely decide whether [each] ... is sufficiently reasonable to render the clause ambiguous." *Mellon Bank, N.A. v. United Bank Corp.*, 31 F.3d 113, 115 (2d Cir.1994) (citation and quotation marks omitted) (finding that given two conflicting reasonable interpretations, the contract's language was ambiguous). However, "ambiguity itself is not enough to preclude summary judgment. Rather, in order for the parties' intent to become an issue of fact barring summary judgment, there must also exist relevant extrinsic evidence of the parties' actual intent." *Id.* at 116.

■ Zim asserts that, even assuming it is responsible for the delay in transporting the Equipment because it did not follow the Shipping Instructions and/or mishandled the Cargo Documentation, it has no liability for delay or consequential damages pursuant to the terms and conditions of Zim's Bill of Lading (the "Bill"). Clause Five of the Bill states that "[a]rrival times are not guaranteed by [Zim]" and Zim "shall not be liable for any direct or indirect loss or damage sustained by [GSI] through delay" or for "consequential damages due to delay or any other cause" (the "Delay Clause"). (Bill cl. 5, attached as Ex. E to Def.'s Mem.) Zim concludes that, even if it were liable for delaying the Equipment's passage through customs, it cannot be held responsible pursuant to the Delay Clause for the Demurrage Charges. The Court disagrees.

The Delay Clause does not preclude GSI from recovering the Demurrage Charges resulting from Zim's alleged negligence. The Carriage of Goods at Sea Act, 46 U.S.C. § 30701 note ("COGSA"), applies to the instant action. *See* COGSA § 13 (stating that COGSA applies "to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade"). Under COGSA, carriers—such as Zim—may not disclaim liability for loss or damage to or in connection with the goods being transported that arises out of the carrier's own negligent conduct. *See id.* § 3(8). Because Zim may not disclaim

liability for such negligence under COGSA, the Delay Clause does not preclude GSI from recovering the Demurrage Charges incurred as a result of Zim's alleged negligence in failing to adhere to the Shipping Instructions or in mishandling the Cargo Documentation. *See Amazon Produce Network, LLC v. M/V Lykes Osprey,* 553 F.Supp.2d 502, 509 (E.D.Pa.2008). Because Zim cannot disclaim liability for its own negligence, a genuine issue of material fact remains regarding whether Zim acted negligently, and if so, whether that negligence proximately caused the Demurrage Charges.

■ Furthermore, the Court finds that the Delay Clause is sufficiently ambiguous to preclude summary judgment under the instant circumstances. A reasonably intelligent person who was cognizant of the shipping industry's customs, practices, usages, and terminology could interpret the term "delay" in the Delay Clause as meaning delay in the actual voyage because of circumstances beyond the carrier's control (*e.g.,* storms encountered en route or labor strikes), and that the Delay Clause is not applicable to delays caused by the carrier's own alleged negligence in mishandling the Cargo Documentation or failing to adhere to the Shipping Instructions. A genuine issue of material fact thus remains in the instant case regarding whether the parties intended for the Delay Clause to preclude liability for the Demurrage Charges. Accordingly, Zim's motion for summary judgment based on the Delay Clause is denied.

### 2. *Demurrage Charges as Consequential Damages*

■ In addition to recovering "the natural and probable consequences of the breach," the non-breaching party may also recover special or consequential damages, which flow from the breach of contract but "are restricted to those damages which were reasonably foreseen or contemplated by the parties during their negotiations or at the time the contract was executed." *Command Cinema Corp. v. VCA Labs, Inc.,* 464 F.Supp.2d 191, 200 (S.D.N.Y.2006) (citation and quotation marks omitted); *see also McKernin & Co. v. United States Lines, Inc.,* 416 F.Supp. 1068, 1072 (S.D.N.Y.1976) (stating that non-breaching parties may recover such damages that " 'may fairly and reasonably be considered either arising naturally, i.e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it' ") (*quoting Hadley v. Baxendale,* 9 Exch. 341 (1854)). The underlying premise is that "[t]he party breaching the contract is liable for those risks foreseen or which should have been foreseen at the time the contract was made," and "[w]here the contract is silent on the subject, the court must take a 'common sense' approach, and determine what the parties intended by considering the nature, purpose and particular circumstances of the contract known by the parties . . . as well as what liability the defendant fairly may be supposed to have assumed consciously." *Schonfeld v. Hilliard,* 218 F.3d 164, 172 (2d Cir.2000) (citations and quotation marks omitted).

Zim asserts that, at the time it agreed to transport the Equipment, GSI failed to place Zim on notice of any special circumstances that could give rise to the Demurrage Charges. Specifically, Zim argues that GSI did not put Zim on notice that: potential damages might occur in the event the Equipment was not shipped in accordance with the Shipping Instructions; all of the Equipment needed to reach the Discharge Port by a particular date so as

to avoid the Demurrage Charges; and the Equipment was subject to a single permit entry held by Gvardia, which would delay the Equipment's ability to clear customs until all of the Equipment arrived at the Discharge Port. Zim concludes that because GSI failed to place Zim on notice of the possibility that the Demurrage Charges could be incurred, Zim cannot be held liable for any consequential demurrage damages.

■The Court finds that Zim may not be held liable for the Demurrage Charges caused by its alleged failure to adhere to the Shipping Instructions. It is undisputed that Zim was not made aware that the Equipment was subject to a single permit entry and could not pass through Russian customs until the final installment arrived. GSI has not put forth sufficient evidence establishing that Zim should have been on notice or should have foreseen that the Equipment could not have passed through customs at the Discharge Port until all of the Equipment had arrived. Accordingly, Zim may not be held liable for the Demurrage Charges incurred by GSI to the extent that such expenses were proximately caused by Zim's alleged negligence in failing to adhere to the Shipping Instructions.

Zim, however, may be held liable for the Demurrage Charges proximately caused by its alleged negligent preparation and handling of the Cargo Documentation. At the time Zim agreed to transport the Equipment, Zim should have understood that the Equipment would have to clear Russian customs, and based on Zim's experience with customs authorities, it was foreseeable that if Zim negligently prepared and/or mishandled the Cargo Documentation, the Equipment would be delayed at the Discharge Port and incur additional demurrage charges until the Cargo Documentation was corrected and the Equipment cleared Russian customs.

In the instant matter, the portion of the Demurrage Charges proximately caused by Zim's alleged negligent preparation and handling of the Cargo Documentation were natural and probable consequences of Zim's actions. Accordingly, Zim may be liable to the extent that its alleged negligent preparation and handling of the Cargo Documentation proximately caused the Demurrage Charges.

## B. *ERRORS OF ZIM'S INDEPENDENT CONTRACTOR*

■ RusCon ("RusCon") acted as Zim's independent contractor at the Discharge Port, and GSI asserts that part of the delay for the Equipment to clear customs is a result of RusCon's negligent delay in providing Gvardia with corrected copies of the Bills. A party who retains an independent contractor is generally not liable for the negligent acts of the independent contractor or its servants. *See Murphy v. Guilford Mills, Inc.*, No. 02 Civ. 10105, 2005 WL 957333, at *4 (S.D.N.Y. Apr.22, 2005); *Tesillo v. Emergency Physician Assocs., Inc.*, 376 F.Supp.2d 327, 330 (W.D.N.Y.2005). This general rule is rooted in the principle that a party who hires an independent contractor does not control the manner in which the work is to be performed, and thus, the risk of loss is most sensibly placed on the contractor. *See Murphy*, 2005 WL 957333, at *4.

■ Zim asserts that, because RusCon was acting as an independent contractor, Zim cannot be held liable for RusCon's alleged negligence in preparing and handling the Bills. The Court is not persuaded. Under COGSA, Zim had a non-delegable duty to properly prepare the Bills. *See* COGSA §§ 2, 3(3) (stating that "under every contract of carriage of goods by sea, the carrier ... shall be subject to the responsibilities and liabilities set forth in [§ 3]," which include issuing a bill of lad-

ing). Accordingly, Zim may be held liable for any of the Demurrage Charges that were proximately caused by RusCon's alleged negligent preparation and mishandling of the Bills.

### C. INDEMNIFICATION FOR VOLUNTARY PAYMENTS

■ A party that settles a claim, despite having no potential liability or possibility of liability for any claim, may be considered a "volunteer" who is unable to recover contribution for the amount paid to settle the claim. *See St. Paul Fire and Marine Ins., Co. v. Schneider Nat'l Carriers, Inc.*, No. 03 Civ. 5197, 2006 WL 522455, at *10 (S.D.N.Y. Mar.3, 2006). " 'Potential liability should be construed broadly for the purposes of ascertaining whether a party is a volunteer.' " *Id.* (*quoting Stewart Title Guar. Co. v. Azar.* No. 92 Civ. 7576, 1993 WL 141797, at *7 (N.D.Ill. Apr.30, 1993)).

■ Zim asserts that GSI paid the Demurrage Charges as a volunteer, and as such, GSI cannot recover that amount from Zim. GSI asserts that, pursuant to its contract with Martinico, GSI was responsible for delivering the Equipment on a cost insurance freight ("C.I.F.") basis, which is a commercial term meaning that, under its agreement with Martinico, GSI "delivers" the Equipment to Martinico once the Equipment passes the ship's rail in the port of shipment, and thereafter, the risk of loss or damage to the Equipment is transferred from GSI to Martinico. *See St. Paul Guardian Ins. Co. v. Neuromed Med. Sys. & Support,* No. 00 Civ. 9344, 2002 WL 465312, at *4 (S.D.N.Y. Mar. 2002); *see, e.g., Aslanidis v. United States Lines, Inc.,* 7 F.3d 1067, 1076 (2d Cir. 1993); *Elia Salzman Tobacco Co. v. SS Mormacwind,* 371 F.2d 537, 539–40 (2d Cir.1967). Zim argues that GSI could not have incurred any potential or possible liability related to the Demurrage Charges because title to the Equipment and the Equipment's risk of loss transferred to Martinico and/or Gvardia once the Equipment was loaded at the port of shipment, and thus, GSI was not potentially liable for the Demurrage Charges incurred at the Discharge Port. Zim concludes that GSI paid the Demurrage Charges in order to preserve its business relationship with Gvardia, not because of any potential or possible liability associated with the Demurrage Charges.

The Court finds that GSI was exposed to potential liability and is not persuaded that GSI paid the Demurrage Charges as a volunteer. GSI asserts that it was responsible, pursuant to its contract with Martinico, for choosing a carrier that would deliver the Equipment to the Discharge Port, and that it chose Zim as its carrier. GSI was potentially liable for the Demurrage Charges pursuant to its contractual obligations with Martinico because Zim, GSI's chosen carrier, had allegedly negligently prepared and mishandled the Cargo Documentation. *See St. Paul Fire and Marine Ins., Co.,* 2006 WL 522455, at *10 (stating that "potential liability" should be construed broadly when ascertaining whether one is a volunteer). Accordingly, because GSI faced potential liability for the Demurrage Charges, it was not acting as a volunteer and may recover the Demurrage Charges from Zim.

### D. SETTLOR BAR RULE

■ Zim asserts that, even if GSI was liable for the Demurrage Charges, GSI's claims against Zim under COGSA and in tort are barred under New York's Settlor Bar Rule. Under New York law, "[a] tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person." N.Y. Gen. Oblig. Law § 15–108(c) (2008) (the

"Settlor Bar Rule"). The Settlor Bar Rule generally applies to contribution claims brought by a settling co-tortfeasor. *See, e.g., Overseas Nat'l Airways, Inc. v. United States,* 766 F.2d 97, 102–3 (2d Cir.1985).

The Settlor Bar Rule, however, is not applicable in the instant matter. Zim has not proffered sufficient evidence establishing that GSI was a settling co-tortfeasor within the meaning of the Settlor Bar Rule. GSI's potential liability for the Demurrage Charges originated from its contractual relationship with Martinico, resulting in the potential liability rooted in contract law, not tort law. Accordingly, the Settlor Bar Rule does not preclude GSI from recovering the Demurrage Charges from Zim.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendant Zim Integrated Shipping Services, Ltd. ("Zim") for summary judgment is GRANTED to the extent that the GSI Group, Inc.'s ("GSI") additional demurrage expenses (the "Demurrage Charges") incurred at the port of discharge were proximately caused by Zim's alleged negligence in failing to transport the containers as instructed in four installments over an approximate three week period; and it is finally

**ORDERED** that the motion of Zim for summary judgment is DENIED to the extent that Zim's alleged negligent preparation and handling of the shipping and customs documentation, or that of its alleged independent contractors, proximately caused the Demurrage Charges.

**SO ORDERED.**